# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

## DEFENDANTS

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant _____
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1  U.S. Government Plaintiff

☐ 2  U.S. Government Defendant

☐ 3  Federal Question *(U.S. Government Not a Party)*

☐ 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                                    *and One Box for Defendant)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal | ☐ 376 Qui Tam (31 USC |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Product Liability | | 28 USC 157 | 3729(a)) |
| ☐ 140 Negotiable Instrument | Liability | ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Pharmaceutical | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| & Enforcement of Judgment | Slander | Personal Injury | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted | Liability | ☐ 368 Asbestos Personal | | ☐ 835 Patent - Abbreviated | ☐ 460 Deportation |
| Student Loans | ☐ 340 Marine | Injury Product | | New Drug Application | ☐ 470 Racketeer Influenced and |
| (Excludes Veterans) | ☐ 345 Marine Product | Liability | | ☐ 840 Trademark | Corrupt Organizations |
| ☐ 153 Recovery of Overpayment | Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 880 Defend Trade Secrets | ☐ 480 Consumer Credit |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards | Act of 2016 | (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | ☐ 371 Truth in Lending | Act | | ☐ 485 Telephone Consumer |
| ☐ 190 Other Contract | Product Liability | ☐ 380 Other Personal | ☐ 720 Labor/Management | **SOCIAL SECURITY** | Protection Act |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Property Damage | Relations | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 196 Franchise | Injury | ☐ 385 Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ |
| | ☐ 362 Personal Injury - | Product Liability | ☐ 751 Family and Medical | ☐ 863 DIWC/DIWW (405(g)) | Exchange |
| | Medical Malpractice | | Leave Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement | | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | Income Security Act | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate | | ☐ 870 Taxes (U.S. Plaintiff | Act |
| ☐ 240 Torts to Land | ☐ 443 Housing/ | Sentence | | or Defendant) | ☐ 896 Arbitration |
| ☐ 245 Tort Product Liability | Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party | ☐ 899 Administrative Procedure |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 535 Death Penalty | **IMMIGRATION** | 26 USC 7609 | Act/Review or Appeal of |
| | Employment | **Other:** | ☐ 462 Naturalization Application | | Agency Decision |
| | ☐ 446 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration | | ☐ 950 Constitutionality of |
| | Other | ☐ 550 Civil Rights | Actions | | State Statutes |
| | ☐ 448 Education | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - | | | |
| | | Conditions of | | | |
| | | Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☐ 1 Original Proceeding

☐ 2 Removed from State Court

☐ 3 Remanded from Appellate Court

☐ 4 Reinstated or Reopened

☐ 5 Transferred from Another District *(specify)*

☐ 6 Multidistrict Litigation - Transfer

☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:

Brief description of cause:

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
**JURY DEMAND:**   ☐ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*   JUDGE _____   DOCKET NUMBER _____

DATE

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

## DESIGNATION FORM
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: C/O ANDREW TEITELMAN, ESQ., 380 RED LION RD. STE. 103, HUNTINGDON VALLEY, PA 19006

Address of Defendant: ONE MONTGOMERY PLAZA, STE 800, NORRISTOWN, PA 19404

Place of Accident, Incident or Transaction: MONTGOMERY COUNTY PA

---

**RELATED CASE, IF ANY:**

Case Number: _____ Judge: _____ Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court? Yes ☐ No ☑

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court? Yes ☐ No ☑

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court? Yes ☐ No ☑

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual? Yes ☐ No ☐

I certify that, to my knowledge, the within case ☐ is / ☑ is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 11/03/2020     /s Andrew Teitelman     PA 43545
                               *Attorney-at-Law / Pro Se Plaintiff*       *Attorney I.D. # (if applicable)*

---

**CIVIL: (Place a √ in one category only)**

**A.** **Federal Question Cases:**

1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☐ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☑ All other Federal Question Cases
   *(Please specify):* olation of 14th Amendment to US Constitutio

**B.** **Diversity Jurisdiction Cases:**

1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury *(Please specify):* _____
7. ☐ Products Liability
8. ☐ Products Liability – Asbestos
9. ☐ All other Diversity Cases
   *(Please specify):* _____

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, Andrew Teitelman , counsel of record *or* pro se plaintiff, do hereby certify:

☐ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

☑ Relief other than monetary damages is sought.

DATE: 11/03/2020     /s Andrew Teitelman     PA 43545
                               *Attorney-at-Law / Pro Se Plaintiff*       *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

Civ. 609 (5/2018)

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**
**(Philadelphia Division)**

| | |
|---|---|
| KATHY BARNETTE, individually and as a candidate for Pennsylvania's 4th Congressional District and on behalf of all citizen electors of Montgomery County and Berks County, Pennsylvania,<br><br>and<br><br>CLAY D. BREECE, individually and as an elector in that portion of Pennsylvania's 4th Congressional District located in Berks County, and on behalf of all citizen electors of Berks County, Pennsylvania within Pennsylvania's 4th Congressional District<br><br>Plaintiffs,<br><br>v.<br><br>KENNETH E. LAWRENCE JR., Chair of the Montgomery County Board of Elections and Vice Chair of the Montgomery County Board of Commissioners, in his official capacity,<br><br>VALERIE A. ARKOOSH, MD, MPH, Vice Chair of the Montgomery County Board of Elections and Chair of the Montgomery County Board of Commissioners, in her official,<br><br>FRANK DEAN, Mail-In Election Director for Montgomery County, in his official capacity.<br><br>Defendants. | **COMPLAINT**<br><br>Civil Action No. |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

### INTORDUCTION

Not all counties in the Commonwealth of Pennsylvania are giving voters the same

opportunity to vote, jeopardizing the integrity of the 2020 election.  In Montgomery County, the

Board of Elections is not only deviating from the standards set forth in the Pennsylvania Election Code, they have substituted and are implementing their own arbitrary standards by illegally pre-canvassing mail-in ballots received before November 3rd *and,* in certain instances, providing the electors submitting such illegally pre-canvassed ballots that are found to be deficient an opportunity to *re-vote* on or before November 3rd. The photograph below shows some of the more than 3,900 pre-canvassed ballots literally sitting in the main public hallway of the Montgomery County Health and Human Services Building (where, in another part of the building, the *two* rooms being used for the canvassing of mail-in ballots is located):[1]



---

[1] This "Ballots for Sale" photo was taken on 11/01/2020 by Robert Gillies during a tour of the Montgomery County mail-in ballot storage and canvass facility.

The ballots are near the main entrance of the building and are easily accessible by anyone entering or leaving the facility, whether county employees of members of the public. The Pennsylvania Election Code expressly prohibits counties from pre-canvasing any ballots, including absentee and mail-in ballots, before 7:00 a.m. on Election Day. 25 § P.S. 3146.8(g)(1.1).  The Supreme Court of Pennsylvania stated: "[U]nlike in-person voters, mail-in or absentee voters are not provided an opportunity to cure perceived defects in a timely manner."  *In re: November 3, 2020 General Election,* No. 149 MM 2020, *12 (Pa. Oct., 23, 2020).  Part of the Supreme Court's rationale is tied to the equal treatment of voters.  While Berks County, some of whose electors, including plaintiff Breece, share the Pennsylvania 4th Congressional District with the majority of Montgomery County electors, is adhering to the Election Code and the Supreme Court's ruling, Montgomery County is pre-canvasing mail-in and absentee ballots, before 7 a.m. on Election Day, detecting defects in these ballots, and contacting <u>some</u> mail-in or absentee voters to change their ballots.

To make matters worse, the Montgomery County Board of Elections is restricting the ability of candidates and their representatives, the parties and their representatives and other legally constituted watchers (the "Canvass Watchers") to observe the entire canvass process for the mail-in and absentee ballots by:

1.     Using two rooms instead of one, but only allowing the Canvass Watchers to be in a tiny holding pen at the edge of the room where the ballots will be scanned. The holding pen does not even afford a sufficient view of all of the ballot scanners and operators and, at best a highly obstructed view of the room where the ballot envelopes are opened and no view of the area where a committee chosen by the Election Board will make the decisions about the legality/staleness of ballots - - affording the Canvass Watchers no opportunity to observe and

protect any objection(s) they may have.

    2.    Providing a single 40" flat screen television in the holding pen so the Canvass Watchers permitted to be in the pen can see views obtained from approximately 12 ceiling cameras located throughout the two rooms that are supposed to be a substitute for actually observing the entire canvass process.

    3.    The vast majority of the Canvass Watchers will not even be able to be in the holding pen and will be relegated to a remote "overflow room" that has two 40" flat screen televisions meant to be a substitute view for the entire canvassing process.

These blatant failures to adhere to Election Code were made known to the Board of Elections by plaintiff Barnette through her counsel's letter dated November 1, 2020, a copy of which is attached hereto as <u>Exhibit A</u>. That letter followed Barnette's letter of October 31, 2020, (attached hereto as <u>Exhibit B</u>), where she requested that the Board of Elections supply her with the written procedures they will employ regarding the handling, security, chain of custody and canvass of the mail-in and absentee ballots and, also requesting that they be permitted to make a video recording of the process, while painstakingly adhering to privacy and security concerns. Barnette's requests were ignored, brushed off or red-taped into oblivion by the response of the Election Board *via* County Solicitor Josh Stein's letter of November 2, 2020, a copy of which is attached hereto as <u>Exhibit C</u>, along with the email exchanges between the parties related thereto.

Montgomery County's failure to comply with the Election Code and the Supreme Court's holding results in the disparate treatment of voters in violation of the Equal Protection Clause of the Fourteenth Amendment. Equivalent votes in different counties and amongst similarly situated Montgomery County electors are being treated differently. Pennsylvania voters should not be treated differently based on the county where they are required to vote.

## PARTIES, JURISDICTION, AND VENUE

1.      Plaintiff, Kathy Barnette, is a resident of the Commonwealth of Pennsylvania, residing in Montgomery Country, and is an elector therein and a candidate for the Fourth Congressional District in Pennsylvania.

2.      Plaintiff, Clay D. Breece, is a resident of the Commonwealth of Pennsylvania, residing in Berks County, and is an elector for the Fourth Congressional District in Pennsylvania.

3.      Defendant, Montgomery County Board of Elections is responsible for overseeing the conduct of elections in Montgomery County, including the conduct of election personnel at polling locations throughout the county.

4.      Defendant, Kenneth E. Lawrence, Jr., is the Chairman of the Board of Elections and the Vice Chair of the Montgomery County Board of Commissioners and is sued in his official capacity.

5.      Defendant, Valerie A. Arkoosh, MD, MPH, is the Vice Chair of the Board of Elections and Chair of the Montgomery County Board of Commissioners and is sued in her official capacity.

6.      Defendant, Frank Dean, is the Montgomery County Director of Mail-In Voting and is sued in his official capacity.

7.      This Court has jurisdiction of this matter pursuant to 42 U.S.C. § 1983 and 28 U.S.C. § 2201.

8.      Venue is proper under 28 U.S.C. § 1391(b).

## BACKGROUND

9.      The Pennsylvania Election Code states: "The county board of elections shall meet no earlier than seven o'clock A.M. on election day to pre-canvass all ballots received prior to the

meeting." 25 P.S. § 3146.8(g)(1.1.).

10.     "The word 'pre-canvass' shall mean the inspection and opening of all envelopes containing official absentee ballots or mail-in ballots, the removal of such ballots from the envelopes and the counting, computing and tallying of the votes reflected on the ballots.  The term does not include the recording or publishing of the votes reflected on the ballots." 25 P.S. § 102(q.1).

11.     "A county board of elections shall provide at least forty-eight hours' notice of a pre-canvass meeting by publicly posting a notice of a pre-canvass meeting on its publicly accessible Internet website." 25 P.S. § 3146.8(g)(1.1.).

12.     And, "one authorized representative of each candidate in an election and one representative from each political party shall be permitted to remain in the room in which the absentee ballots and mail-in ballots are pre-canvassed. No person observing, attending or participating in a pre-canvass meeting may disclose the results of any portion of any pre-canvass meeting prior to the close of the polls." *Id*.

13.     During the pre-canvasing, the county board first "shall examine each ballot cast to determine if the declaration envelope is properly completed and to compare the information with the information contained in the 'Registered Absentee and Mail-in Voters File.'" 25 P.S. § 3146.8(g)(3).

14.     Then the board "shall open the envelope of every unchallenged absentee elector and mail-in elector in such manner as not to destroy the declaration executed thereon." 25 P.S. § 3146.8(g)(4)(i).

15.     "If any of the envelopes on which are printed, stamped or endorsed the words 'Official Ballot Election contain any text, mark or symbol which reveals the identity of the

elector, the elector's political affiliation or the elector's candidate preference, the envelopes and the ballots contained therein shall be set aside and declared void." 25 P.S. § 3146.8(g)(4)(ii).

16.    Finally, the county board "shall then break the seals of such envelopes, remove the ballots and count, compute and tally the votes." 25 P.S. § 3146.8(g)(4)(iii).

17.    The Montgomery County Board of Elections has verified that, in contravention of Pennsylvania's Election Code, Montgomery County officials began pre-canvassing before November 3, 2020, by inspecting newly received mail-in ballots and/or absentee ballots and noting any defects such as defects in declarations or a missing inner envelope also known as a "secrecy envelope." Email from Joshua M. Stein, Esquire to Julia Vahey, 10/31/20; Email from Frank Dean (Dean) to Lee Soltysiak and Josh Stein, 10/31/20 (hereinafter "Ex. D"); Excel spreadsheet attached to Email from Dean to Lee Soltysiak and Josh Stein, 10/31/20 (hereinafter "Ex. E").

18.    Specifically, in his October 31, 2020 e-mail, Dean sent the "latest list of ballots with defects" to Lee Soltysiak and Josh Stein and wrote: "If the defect is an Incomplete Declaration or Missing Secrecy Envelope, the voter need only come to 1430 DeKalb Street, Norristown, PA 19401. They will be given the opportunity to correct their declaration or we will provide them with a secrecy envelope, which they can insert and reseal inside the Ballot Return Envelope." Ex. D.

19.    Dean further wrote: "For the remainder of defects, the voter needs to go to Voter Services, One Montgomery Plaza, 425 Swede Street, Suite 602, Norristown, PA 19404 and request a Cancel/Replace." Ex. D.

20.    The Supreme Court of Pennsylvania stated: "[U]nlike in-person voters, mail-in or absentee voters are not provided an opportunity to cure perceived defects in a timely

manner." *In re: November 3, 2020 General Election,* No. 149 MM 2020, at *12.

21.     The Excel spreadsheet attached to Dean's October 31, 2020 e-mail indicates that Montgomery County began pre-canvassing as early as October 21, 2020, based on start and end times in the spreadsheet, and contacted some but not all voters with defects in their ballots.  Ex. E.

22.     Dean's October 31, 2020 e-mail and Excel spreadsheet demonstrates that Montgomery County engaged in pre-canvassing prior to 7:00 a.m. on Election Day by inspecting absentee and/or mail-in ballots.  Exs. A & B.  Dean's Excel spreadsheet specifically notes ballots have defective declarations and lack a secrecy envelope.  Ex. E.

23.     Montgomery County never provided public notice 48 hours prior to engaging in pre-canvassing.

24.     Montgomery County deprived one authorized representative from each candidate, including Barnette, and each party from being in the room in which the mail-in and absentee ballots are pre-canvassed.

25.     Montgomery County also essentially unlawfully disclosed a portion of a pre-canvass meeting prior to the close of the polls.

26.     Montgomery Count allowed voters to change their ballots by, for example, changing their declarations or adding a secrecy envelope in the Ballot Return Envelope.

27.     Upon information and belief, Berks County has not deviated from the Election Code standards by adding their own language or engaging in pre-canvasing or limiting the ability of their Canvass Watchers to actually observe the entire canvass of the mail-in and absentee ballots in that county; and does not intend pre-canvass or canvass such ballots prior to 7:00 a.m. on Election Day.  Unlike the Montgomery County Board of Elections, the Berks County Board

of elections has provided public notice and stated: "Due notice is hereby given that the pre-canvass of mail-in and absentee ballots will commence on November 3, 2020 at 7:00AM, Doubletree by Hilton Hotel Reading, 701 Penn Street, Reading, PA 19601."  Berks County Public Notice of Pre-Canvassing, https://www.co.berks.pa.us/Dept/Elections/Pages/default.aspx (last visited Nov. 2, 2020).

28.  Berks County in Pennsylvania is following the Election Code by (a) refraining from pre-canvasing until 7:00 a.m. on Election Day and (b) not providing electors an opportunity to change their ballots after submitting the ballots to Berks County. They are also providing their Canvass Watchers a full and fair opportunity to observe the entire canvass process, unlike Montgomery County.

29.  Montgomery County's actions violate the Election Code of Pennsylvania, the Supreme Court of Pennsylvania's holding, and the Equal Protection Clause of the Fourteenth Amendment.

30.  As a result of Montgomery County's actions, similarly situated voters are being treated differently based on the county where they are required to vote.  In other words, equivalent votes in different counties are being treated differently.

31.  In *Bush v. Gore*, 531 U.S. 98, 104-05 (2000), the Court determined that Florida's disparate method of determining a legal vote amounted to an unconstitutional abridgment of the right to vote.  The Supreme Court held that "[h]aving once granted the right to vote on equal terms, the State may not, by later arbitrary and disparate treatment, value one person's vote over that of another."  *Id*. (citing *Harper v. Va. Bd. of Elections*, 383 U.S. 663, 665 (1966) ("[O]nce the franchise is granted to the electorate, lines may not be drawn which are inconsistent with the Equal Protection Clause of the Fourteenth Amendment.").

32.     At this juncture, in order to make sure that voters in Berks County and Montgomery County are treated equally, Defendants must set aside and declare void any ballots that have been submitted to Montgomery County and subsequently changed.

33.     Currently, the Montgomery County Board of Elections has identified at least 1,200 electors as of Dean's October 31, 2020 e-mail, who submitted a defective mail-in or absentee ballot.  Plaintiff does not challenge Montgomery County's actions with respect to any mail-in or absentee ballot that was not submitted by the voter.

34.     Defendants have exalted Montgomery County mail-in and absentee voters over other voters such as voters in Berks County in the Commonwealth of Pennsylvania.

35.     Plaintiff is running as the candidate in the 4th Congressional District for the Republican Party, and she will be at a significant disadvantage as the 4th Congressional District consists of both Montgomery County and Berks County.  A vote that could count in Montgomery County will not count in Berks County because of the decisions made by Defendants in violation of Pennsylvania's Election Code and the Supreme Court of Pennsylvania's holding.

36.     In short, the Montgomery County Board of Elections practice is unlawful and unconstitutional, and it should be stopped.

37.     The standard being applied by Montgomery County Election Board will result in similarly situated electors in Montgomery County, whose ballots have the same kinds of disqualifying issues that would render them stale, but which are detected on or after November 3rd, from those whose ballots are shown in the Ballots for Sale photo who the county will permit to revote if they show up on or before November 3rd.  And, the improper pre-canvass and opportunity to revote given to some Montgomery County electors is not being offered at all - -

and properly so, by the Berks County Board of Elections, resulting in their 4th Congressional District electors being treated differently from the Montgomery County electors whose ballots were pre-canvassed prior to 11/03. None of the electors from either county should be permitted to revote and none of their ballots should have been pre-canvassed in any event.

## COUNT I
### Violation of the Fourteenth Amendment of the Constitution of the United States of America

38.   The allegations set forth in the foregoing paragraphs are incorporated herein as though set forth at length.

39.   The Board's action presents not only a problem under Pennsylvania's Election Code but it violates the Equal Protection Clause of the Fourteenth Amendment. *Bush v. Gore*, 531 U.S. 98, 104-05 (2000) ("[H]aving once granted the right to vote on equal terms, the State may not, by later arbitrary and disparate treatment, value one person's vote over that of another.")

40.   The Montgomery County Board of Elections has placed Montgomery County mail-in and absentee voters on a pedestal by engaging in pre-canvassing of absentee or mail-in ballots prior to 7:00 a.m. on Election Day, by contacting select voters to notify them that they may change their ballot, and by permitting select voters to change their ballots.

41.   Plaintiff has no adequate remedy at law and will suffer serious and irreparable harm to their constitutional rights unless Defendants are enjoined and compelled to enforce the mandates of the Election Code.

## PRAYER FOR RELIEF

WHEREFORE, plaintiffs respectfully request that this Court enter an Order:

a.   Enjoining the defendants and anyone acting on their behalf from pre-canvassing

ballots before 7:00 a.m., Tuesday, November 3, 2020.

b.    Enjoining the defendants and anyone acting on their behalf from contacting any elector whose mail-in ballot or absentee ballot contains perceived and actual defects and allowing the elector to change their ballot.

c.    Setting aside, sequestering and declaring spoiled any mail-in or absentee ballots that have been changed by an elector or otherwise not conforming with the Election Code;

d.    Declaring the defendants' conduct unconstitutional;

e.    Awarding Plaintiff's attorneys fees and costs under 42 U.S.C. § 1983, 1988; and

f.    Awarding Plaintiff any other appropriate relief.

Dated: November 3, 2020                     Respectfully submitted,

*/s/ Andrew Teitelman*
Andrew Teitelman
PA ID No. 43545
Law Offices of Andrew Teitelman P.C.
380 Red Lion Rd Ste 103
Huntingdon Valley, PA, 19006
Tel: 267-255-6864  Fax: 215-434-7491
Email: ateitelman@teitelaw.com

*/s/ Thomas E. Breth*
Thomas E. Breth
PA ID No. 66350
Dillon McCandless King Coulter & Graham LLP
128 West Cunningham Street
Butler, PA. 16001
724-283-2200

*Counsel for Plaintiffs*

**EXHIBIT A**



## Law Offices of
### Andrew Teitelman P.C.

November 1, 2020

*Via Email – voters@montco.org &*
*Facsimile – 610-292-4527*
Montgomery County Board of Elections
P.O. Box 311
Norristown, PA 19404-0311

*Via Email – ken@montcopa.org*
*Facsimile – 610-292-4527*
Kenneth E. Lawrence Jr., Chair
Montgomery County Board of Elections
P.O. Box 311
Norristown, PA 19404-0311

*Via Email – JGale@montcopa.org*
*Facsimile – 610-292-4527*
Joseph C. Gale, Vice Chair
Montgomery County Board of Elections
P.O. Box 311
Norristown, PA 19404-0311

*Via Email – val@montcopa.org*
*Facsimile – 610-292-4527*
Valerie A. Arkoosh, MD, MPH
Montgomery County Board of Elections
P.O. Box 311
Norristown, PA 19404-0311

*Via Email – coo@montcopa.org*
*Facsimile – 610-292-4527*
Lee Soltysiak, Chief Clerk
Montgomery County Board of Elections
P.O. Box 311
Norristown, PA 19404-0311

*Via Email – JStein1@montcopa.org*
*Facsimile – 610-292-4527*
Josh Stein, Esquire, County Solicitor
One Montgomery Plaza
Suite 800
Norristown, PA 19404

Re:     **LIST OF MONTCO VOTERS WHO REQUESTED AND/OR WERE SENT MAIL-IN BALLOTS**

To the Honorable Members of the Montgomery County Board of Elections:

Further to my letter to the Board dated October 30, 2020, on behalf of Kathy Barnette, the Republican candidate for the United States House of Representatives, Pennsylvania 4th District, and her campaign committee, the Friends for Kathy Barnette (the "Barnette Parties"), my client is formally requesting the following information:

1.  A complete list of all Montgomery County electors from all parties who requested and/or were sent mail-in or absentee ballots. This list should be provided electronically in one of the database formats, such as CSV (comma separated values). If you do not maintain such electronic/computer lists in a common database format, please provide the computerized/electronic list in the format used by the county and instructions for how to access the information. If the electronic/computerized format used by the county to maintain this list is proprietary and not available to the public, parties and candidates equally, then please provide the list in the same manner as you have to other requestors. We expect, at a minimum, that this

**380 RED LION ROAD ● SUITE 103 ● HUNTINGDON VALLEY, PA ● 19006**
**PHONE ● 267.255.6864 ● FACSIMILE ● 215.434.7491**
**E-mail ● ATeitelman@teitelaw.com**

EX A - 1

list will include the name of the voters, their addresses, voting precincts, party affiliation and the date(s) any such mail-in or absentee ballots were requested, the date(s) the ballots were sent to the voters and the date such ballots were returned by the voters for the canvass.

2. Please provide the Barnette Parties with a complete written set of the procedures the Board is employing regarding the handling of mail-in and absentee ballots including, without limitation, the processes for opening the outer mailing envelopes, the inner security envelopes and the basis for qualifying/disqualifying, accepting or rejecting a ballot before the inner security envelope is opened. If there are any ballots which have already been determined to be invalid for any reason, please supply the Barnette Parties with a list of the affected electors and the measures taken to contact them so that they can place a valid ballot by November 3rd. At today's meeting, ballot consideration standards and training for the ballot handlers was discussed. Please provide copies of the training materials so that we also know what standards and practices are being applied.

3. As we previously informed you, the Barnette Parties intend to be present and observe, in accordance with the PA Election Code, the entire processing of the mail-in/absentee ballots including, without limitation, the opening of the outer mailing envelopes and each step thereafter.

However, based on our tour today of the cavass facility located at the Montco Health and Human Services Building, 1430 DeKalb Street, Norristown, PA 19404, we were shocked at the poor observation arrangements that have been put into place for the watchers and representatives of the parties and the candidates. The "pen" like area at the end of the scanner room, supplemented by a single television with camera feeds (the functionality of which could not be demonstrated today, although requested) and a second remote room with two televisions, is unacceptable. For example, most of the envelope opening room cannot be visualized from the holding pen - - which brings us to the most fundamental problem of all. The opening in the wall separating the scanner area from the opening area is not only inadequate to allow proper observation by the observer, it makes it clear there are two rooms to be watched and not one.

We can offer you several options to make the canvass as transparent and fair as it should be. First and foremost, we urge you to assent to our making our own video and audio recordings as discussed in my letter dated October 30, 2020. At a minimum, you should provide all watchers with the ability to access the live feed of the video cameras you intend to use to supply images to the television sets mentioned above. We would work with you to develop proper protocols to maintain the video feeds and recordings thereof in a secure manner.

We are hopeful that you will be able to adequately respond to our inquiries in this and my prior letter. We hope to avoid litigation, but we must hear from you by noon tomorrow so that we are clear about where the Board stands and what we must do.

Thank you for your consideration.

Sincerely,

Andrew Teitelman

AT/s

**EXHIBIT B**



# Law Offices of
## Andrew Teitelman P.C.

October 30, 2020

*Via Email – voters@montco.org* &
*Facsimile – 610-292-4527*
Montgomery County Board of Elections
P.O. Box 311
Norristown, PA 19404-0311

*Via Email – ken@montcopa.org*
*Facsimile – 610-292-4527*
Kenneth E. Lawrence Jr., Chair
Montgomery County Board of Elections
P.O. Box 311
Norristown, PA 19404-0311

*Via Email – JGale@montcopa.org*
*Facsimile – 610-292-4527*
Joseph C. Gale, Vice Chair
Montgomery County Board of Elections
P.O. Box 311
Norristown, PA 19404-0311

*Via Email – val@montcopa.org*
*Facsimile – 610-292-4527*
Valerie A. Arkoosh, MD, MPH
Montgomery County Board of Elections
P.O. Box 311
Norristown, PA 19404-0311

*Via Email – coo@montcopa.org*
*Facsimile – 610-292-4527*
Lee Soltysiak, Chief Clerk
Montgomery County Board of Elections
P.O. Box 311
Norristown, PA 19404-0311

*Via Email – JStein1@montcopa.org*
*Facsimile – 610-292-4527*
Josh Stein, Esquire, County Solicitor
One Montgomery Plaza
Suite 800
Norristown, PA 19404

Re:     **Mail-In Ballot Security, Chain of Custody and Canvass Protocols**

To the Honorable Members of the Montgomery County Board of Elections:

Please be advised that I have assumed the representation of Kathy Barnette, the Republican candidate for the United States House of Representatives, Pennsylvania 4th District, and her campaign committee, the Friends for Kathy Barnette (the "Barnette Parties"). Prior to this the Barnette Parties were represented by Jonathan S. Goldstein, Esquire and his firm Goldstein Law Partners, LLC. I mention this because Mr. Goldstein has been in communication with County Solicitor Stein on behalf of the Barnette Parties concerning the matters addressed in this correspondence. Mr. Goldstein and his firm no longer represent the Barnette Parties and, going forward, please direct your communications regarding the Barnette Parties and the matters raised herein to my office only or to such others I may request that you include.

My clients are concerned with the security, chain of custody and canvass protocols being employed regarding mail-in ballots. Given the difficulties with controlling the collection and canvass of the mail-in ballots during the June primary, we are hopeful that the Board of Elections shares our

**380 RED LION ROAD • SUITE 103 • HUNTINGDON VALLEY, PA • 19006**
**PHONE • 267.255.6864 • FACSIMILE • 215.434.7491**
**E-mail • ATeitelman@teitelaw.com**

EX B - 1

desire for a transparent and open mail-in ballot process for the general election and the canvass beginning on November 3rd. As stated in Mr. Goldstein's email exchange with County Solicitor Stein on October 29th, it is my clients' intention to make a video and audio record of the mail-in and absentee ballot canvass beginning on November 3rd at 7:00 a.m. when the pre-canvass commences.

Mr. Goldstein was partially in error by stating that the recordings would be made by one of the Barnette Parties' "watchers." My clients intend to record the process from multiple perspectives during the entire canvass period, so it is likely that more than one representative, whether a watcher pursuant to 25 P.S. § 2650 (a), or attorney in fact pursuant to 25 P.S. § 2650 (b), will be participating in the recordings at any given point in the process. We also anticipate working with other candidates who also want to assure an accurate and impartial recording of the mail-in ballot canvass to make certain there is adequate coverage. It is also our intention to make copies of the recordings available to the Board of Elections.

My clients will, as Mr. Goldstein noted to County Solicitor Stein, be assiduous in assuring that their representatives will not record any specific ballot nor will they interfere with the persons performing the canvass or others properly present, and they will be as quiet and unobtrusive as possible. Mr. Goldstein indicated that he was close to reaching an agreement with County Solicitor Stein regarding my clients' intention to record the mail-in/absentee ballot canvass. We hope to continue in that cooperative spirit and would like to further these discussions with you. I am available any time this evening and over the weekend by phone at 267-255-6864 and by email at ateitelman@teitelaw.com. We will also be available Monday morning as well.

Separately, my clients have an ongoing request to which they require a written response. To date, despite many informal inquiries by the Barnette Parties and others, we still do not have a formal written set of procedures and protocols from the Board for the handling of mail-in ballots from inception through the canvass and any recount(s). For instance, we were led to believe that the ballot drop boxes were to be under video surveillance whenever they were in operation and that we would have access to those streams in real time and/or recordings thereafter. That has not proven to be the case and we need to know if such recordings were made and how we can obtain access. Additionally, my clients were informed yesterday that the document entitled "Delaware County Board of elections 2020 General Election Pre-Canvass and Canvass Process," (attached hereto) has been adopted by your Board. Is this accurate and, if so, what procedure is in place to dispute the portions of this document that my clients find objectionable?

We are hopeful that you will be able to adequately respond to our inquiries and work cooperatively with my clients to accommodate the recording process discussed earlier and establish polling and canvassing practices that are as transparent and open as we should all desire. This is especially important for this election, which is the first general election to employ such widespread mail-in balloting while also dealing with COVID-19 concerns, with what is, most-likely, going to be a record turnout of voters.

Thank you for your consideration.

Sincerely,

Andrew Teitelman

AT/s

# Delaware County Board of Elections

# 2020 General Election

# Pre-Canvass and Canvass Process

The Pre-canvass

The pre-canvass shall commence promptly at 7:00 am on Election Day in the building housing the Bureau office in Chester. Upon or shortly before the commencement of the pre-canvass, a list of all the names of the voters whose ballots are to be pre-canvassed will be posted on the Board website, emailed to party leaders, and provided to any observers present at the pre-canvass.

During the pre-canvass, Board staff will compare the names on the list of ballot envelopes to be pre-canvassed or canvassed to a list provided by the Voter Registration Office of voters who have passed away in the period from October 1, 2020 through Election Day and remove the ballot envelopes of any such voters. Ballots of deceased voters shall not be counted and shall be entered in the SURE system as cancelled in accordance with SURE system procedures.

Each remaining ballot envelope will then be reviewed to confirm that the voter is on the absentee/mail-in voter list as reflected in the preprinted label on the ballot envelope and examined by a Board staff member to assess the sufficiency of the voter declaration on the ballot envelope. In instances where Board staff is uncertain as to the sufficiency of a voter declaration, the matter shall be elevated to the attention of Ms. Hagan and/or Ms. Jackson, who will, in consultation with the Board Solicitor, make a final determination on

**EX B - 3**

that question in accordance with the authority delegated to them by the Board.

All outer ballot envelopes that are successfully confirmed through the foregoing examination process will then be opened. An outer ballot envelope may opened as soon as it is successfully confirmed.

Once the outer ballot envelope is opened, Board staff shall examine the contents of that envelope. If upon inspection of the contents of the outer envelope Board staff discovers that the envelope contains a naked ballot, such naked ballot shall be returned to the outer envelope and set aside and coded as cancelled as described in the October 25, 2020 directive from the Pennsylvania Department of State.

If the outer ballot envelope is found, once opened, to contain a privacy envelope, Board staff shall examine the privacy envelope for any text, mark or symbol that reveals the identity of the voter, the voter's political affiliation, or the voter's candidate preference. Any ballots with such text, markings, or symbols on the privacy envelopes shall be elevated to the attention of Ms. Hagan and/or Ms. Jackson, who will, in consultation with the Board Solicitor, determine, in accordance with the authority delegated to them by the Board, whether the indications disqualify the ballot. Any ballot disqualified for prohibited markings on the privacy envelope shall be returned to its privacy envelope and shall be set aside and declared cancelled as set forth below.

Each ballot that clears the forgoing process shall be prepared for scanning and scanned.

The pre-canvass shall conclude at 8:00 pm on Election Day. When the pre-canvass concludes, the results of the pre-canvass will be tallied on the scanners.

The Canvass

The pre-canvass shall automatically convert into the canvass at 8:00 pm on Election Day.

If the list of ballots to be pre-canvassed was not completed during the pre-canvass, the canvass will continue the review process described above for the ballots remaining from the pre-canvass list.

When the pre-canvass/canvass of all of the ballots on the pre-canvass list nears completion, a list of remaining ballots to be canvassed will be generated and posted on the Board website, emailed to party leaders, and provided to any observers present at the canvass. That list will be updated on a daily basis to reflect ballots newly received by the Board.

At the conclusion of the canvass, any ballots determined during the pre-canvass or canvass to be ballots that should not be counted, including (1) naked ballots, (2) ballots with disqualifying marks on the privacy envelope, and (3) ballots that were not successfully confirmed during the confirmation process, that have not previously been entered into the SURE system as cancelled shall be entered in the SURE system as cancelled in accordance with SURE system procedures and Pennsylvania Department of State directives and guidance.

Hearings on Timely Challenged Ballots

At the place and time designated by the Board and noticed in accordance with the requirements of the Election Code, the Board shall hold a hearing on any Timely Challenged Ballots. Any ballots determined by the Board at such hearing to meet the statutory requirements to be counted shall be opened, scanned, and counted in the usual manner. All ballots determined by the Board at such hearing to fail to meet the requirements to be counted will not be counted and shall be entered in the SURE system as cancelled in accordance with SURE system procedures and Pennsylvania Department of State directives and guidance.

Pre-canvass/Canvass Observers

One authorized representative observer of each candidate in the election and one representative from each political party shall be permitted to be in the room in which the absentee ballots and mail-in ballots are pre-canvassed/canvassed; provided, however, that if the number of observers is such that there is not sufficient space to accommodate all observers at one time in the designated observers area while permitting social distancing, then the observers for the two major parties and for the two major Presidential Campaigns shall be permitted to remain in the room at all times, while the other observers shall be permitted to be in the room on a rotating basis as space and health guidelines permit.

No person observing, attending or participating in the pre-canvass may disclose the results of any portion of the pre-canvass prior to the close of the polls at 8 pm on Election Day.

Any party or candidate seeking to have an observer at the pre-canvass or canvass must email ElectionBoardMembers@co.delaware.pa.us with the name of each observer they would like to appoint, the observer's address, and—if the observer is the attorney for a party or candidate—the PA Bar number of the observer. Due to security restrictions, observer requests must be received by 5 p.m. on Friday, October 30, 2020 in order to be approved prior to Election Day. Requests received after that deadline will be processed on a rolling basis any may not be processed prior to the start of the pre-canvass or canvass.

Observers must be pre-approved in accordance with the process described above and pass a security and health screening in order to be admitted to the pre-canvass and canvass. Each observer must sign the observer log and a written declaration not to disclose the results of any portion of the pre-canvass prior to the close of the polls in order to gain admission to the pre-canvass/canvass.

Each observer must remain in the physical area(s) within the room designated for observers. Observers must at all times wear a face mask, observe social distancing, and comply with other safety guidelines. Observers may not disrupt or interfere with Board staff performing the pre-canvass and canvass. Observers shall not be permitted to take photographs, video or audio recordings, or use mobile phones inside the observation area during the pre-canvass or canvass. Any observer who does not remain within the designated observer area, does not comply with safety guidelines, violates the prohibitions against interference with Board staff or against the taking of photographs, recordings, or mobile phone use, or engages in any other disruptive conduct shall be removed from the pre-canvass/canvass. Any observer removed from the pre-canvass/canvass for failure to remain in the designated observer area, failure

to comply with safety guidelines, or for any other disruptive conduct shall not subsequently be readmitted to the pre-canvass/canvass.

Observers have no right to raise any challenge to any ballot during the pre-canvass or canvass. Any observer who attempts to raise such a challenge shall be removed from the room for engaging in disruptive conduct.

J. Manly Parks
Solicitor
Delaware County Board of Elections

**EXHIBIT C**



**MONTGOMERY COUNTY**
**BOARD OF COMMISSIONERS**

VALERIE A. ARKOOSH, MD, MPH, CHAIR
KENNETH E. LAWRENCE, JR., VICE CHAIR
JOSEPH C. GALE, COMMISSIONER

**OFFICE OF THE SOLICITOR**
MONTGOMERY COUNTY COURTHOUSE • PO BOX 311
NORRISTOWN, PA 19404-0311
610-278-3033
FAX: 610-278-3069 • TDD: 610-631-1211
WWW.MONTCOPA.ORG

November 2, 2020

Andrew Teitelman, Esquire
Law Offices of Andrew Teitelman, P.C.
380 Red Lion Road, Suite 103
Huntingdon Valley, PA 19006
Email: ateitelman@teitelaw.com

Mr. Teitelman,

Montgomery County is in receipt of both your October 30th and October 31st letters, and this correspondence shall serve as the County's formal response to both.

Regarding your request to allow someone from the Barnette campaign to record video of the canvassing process, we must decline this request. While we appreciate your assurances that no video will be taken which would threaten the anonymity of the votes cast, there is no way to ensure that something of that nature would not wind up captured on video. To allow so would be a violation of 25 Pa. C.S.A. Sections 1403 and 1404. In addition, Section 3146.8(g)(1.1) of the Election Code clearly outlines who is permitted to be present for any part of the pre-canvas or canvass, stating for each that "One authorized representative of each candidate in an election and one representative from each political party shall be permitted to remain in the room in which the absentee ballots and mail-in ballots are pre-canvassed" and " One authorized representative of each candidate in an election and one representative from each political party shall be permitted to remain in the room in which the absentee ballots and mail-in ballots are canvassed." Allowing for the unfettered recording of these proceedings would vitiate the purpose of limiting attendance as prescribed by the Election Code.

With that said, given the stated reason for the campaign's desire to make such a recording, namely "creating a contemporaneous record of the process itself" (per the email October 29th email of Jonathan Goldstein), the County will be recording the entirety of the proceedings, as monitored by the cameras in the room. This video will be preserved until such time as it is clear that its retention is no longer required, but at a minimum through certification of the election results. Please let me know if you believe that a longer retention period would be necessary.

Regarding the concerns you have raised regarding greater access to the canvassing room, we have discussed the issue and will permit a limited number of additional certified individuals

**EX C - 1**

to be present within the room, however they will need to remain in the same area as the other watchers and permitted observers. We will also be adding additional television monitors to both the observation area and the overflow room.

While we can appreciate the desire to be closer to the canvass process, given the space constrains of the room, the ongoing pandemic, and the need to follow both Commonwealth and local measures requiring six-foot social distancing, there is little more that can be done. The individuals that will be working in that room have all been assured that the County will be taking all steps possible to ensure their safety and well-being, and we are not prepared to endanger their safety by permitting watchers or others closer access. Attached to this letter you will find a copy of the local order from the Montgomery County Office of Public Health regarding COVID-19 mitigation measures for the General Election, including for the polling locations and the canvassing process. I would also like to take this opportunity to remind you that, pursuant to Section 3146.8 of the Election Code, no more than one person can be in the room on behalf of a candidate at any time, as your initial letter was unclear as to whom it was that would be present for candidate Barnette.

Finally, regarding your request for Public Information Lists by noon today, I am aware that the County provided you with the required form to be provided this information, and that as of 11:30AM this morning, you have not yet returned that completed form. We will be happy to provide you the information as soon as that is submitted to us with all the required information provided.

Respectfully,

Josh Stein

_____
Joshua M. Stein
County Solicitor
Montgomery County Solicitor's Office
One Montgomery Plaza
Suite 800
Norristown, PA 19404-0311
Phone: 610-278-3033
Fax: 610-278-3069
JStein1@montcopa.org

Cc:     Ken Lawrence, Chair, Montgomery County Election Board
        Lee Soltysiak, COO/Chief Clerk, Montgomery County Election Board

EX C - 2

# Andrew Teitelman

| | |
|---|---|
| **From:** | Andrew Teitelman |
| **Sent:** | Monday, November 2, 2020 12:30 PM |
| **To:** | Stein, Josh |
| **Cc:** | Commissioner Kenneth Lawrence; COO; Bob Gillies; Elizabeth Havey - Dilworth Paxson LLP (epreatehavey@dilworthlaw.com) |
| **Subject:** | RE: Response to your 10/30 and 10/31 letters |

Mr. Stein – I appreciate your response to my letters and feel we may be nearing an acceptable understanding if I am correct in my reading of why you have stated. However, there is one point of correction that I feel must be made at the outset. I received an email from Lauren Raikowski sending me the RTK request form at 8:39 a.m. today. I will gladly fill-in and return this form as an accommodation, but I am not corresponding with the Board of Elections as a member of the public, *per se,* as I am the lawyer representing Congressional candidate Kathy Barnette and her committee, the Friends for Kathy Barnette. So my requests are as Ms. Barnette's legal counsel and I am both exercising and protecting her and her committee's rights under the Election Code and generally.

Our need for this information is to assure the transparency of the entire election process, especially the handling of the mail-in ballots. I hope that you understand that our requests are not in the context of implying any wrongdoing - - rather, it is the opposite, in that cooperation and transparency will help to avoid any such implications and help to engender confidence in the electoral process in Montgomery County. Given that this is the first general election, including the office of President of the United States, where large-scale mail-in ballots will play an overwhelmingly significant role and that the entire process is new and virtually untested (the primary in June being the only other example), I hope that you and the Election Board will err on the side of more transparency and not merely meeting the legal requirements at the most minimal level.

As for the acceptable understanding noted above, will the candidates, political committees and their duly authorized representatives have real-time access to the data streams from the cameras in the two rooms being used for the mail-in ballot canvass? If not, how are they supposed to discover problems and be able to raise objections in a timely manner? We respect your concerns about security and privacy and feel there are many ways, short of prohibiting real-time access to the video data streams, to accomplish that. For instance, those being granted access could execute an oath and state that they will keep this information in strict confidence and make no disclosures thereof other than any court action(s) that may arise, etc. This would subject the persons with such access to criminal sanctions for any breach thereof. This is only one example of what we can do to assure proper handling of the information and we will be glad to work with you to a result that is satisfactory to all.

Thank you.

Andrew Teitelman, Esquire
LAW OFFICES OF ANDREW TEITELMAN P.C.
380 Red Lion Road, Suite 103
Huntingdon Valley, PA 19006
P: 267-255-6864
F: 215-434-7491
Email: ateitelman@teitelaw.com

EX C - 3



Notice: This email message may contain legally privileged and/or confidential information. If you are not the intended recipient(s), or the employee or agent responsible for delivery of this message to the intended recipient(s), you are hereby notified that any dissemination, distribution and/or copying of this message is strictly prohibited. If you have received this message in error, please immediately notify the sender and please immediately delete this message from your computer as well as any storage device(s). Thank you.

NEW IRS RULES RESTRICT WRITTEN FEDERAL TAX ADVICE FROM LAWYERS AND ACCOUNTANTS.  WE INCLUDE THIS STATEMENT IN ALL OUTBOUND EMAILS BECAUSE EVEN INADVERTENT VIOLATIONS MAY BE PENALIZED.  NOTHING IN THIS MESSAGE IS INTENDED TO BE USED, OR MAY BE USED, TO AVOID ANY PENALTY UNDER FEDERAL TAX LAWS.  THIS MESSAGE WAS NOT WRITTEN TO SUPPORT THE PROMOTION OR MARKETING OF ANY TRANSACTION.  CONTACT THE SENDER IF YOU WISH TO ENGAGE US TO PROVIDE FORMAL WRITTEN ADVICE AS TO TAX ISSUES.

**From:** Stein, Josh <JStein1@montcopa.org>
**Sent:** Monday, November 2, 2020 12:00 PM
**To:** Andrew Teitelman <ateitelman@teitelaw.com>
**Cc:** Commissioner Kenneth Lawrence <Ken@montcopa.org>; COO <COO@montcopa.org>
**Subject:** Response to your 10/30 and 10/31 letters

Mr. Teitelman,

Please see the attached response to your correspondence of 10/30 and 10/31.

Joshua M. Stein
County Solicitor
Montgomery County Solicitor's Office
One Montgomery Plaza
Suite 800
Norristown, PA 19404-0311
Phone: 610-278-3033
Fax: 610-278-3069
Joshstein@montcopa.org

EX C - 4