**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| KATHY BARNETTE and CLAY D. BREECE,<br><br>                    Plaintiffs,<br><br>          v.<br><br>KENNETH E. LAWRENCE, VALERIE ARKOOSH, MD, MPH, and FRANK DEAN,<br><br>                    Defendants. | :<br>:<br>:<br>:<br>:     NO. 2:20-cv-05477<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: |

## <u>DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER</u>

Plaintiffs ask this Court to disenfranchise a group of Montgomery County voters who, according to the Complaint, made technical errors when they submitted their mail-in or absentee ballots, and then were permitted to correct those mistakes at county election offices. In order to show that they are entitled to such a drastic remedy, Plaintiffs must overcome a series of significant obstacles. They must demonstrate that they have standing to challenge the Montgomery County procedures they allege, that the alleged procedures violate the Pennsylvania Election Code, and that these alleged violations somehow add up to a federal claim. On each of these points, as discussed below, the law is decidedly not in Plaintiffs' favor. Even if they could meet these challenges—which they cannot—Plaintiffs would then have to overcome the consequences of their delay in filing suit, make the impossible showing that spoiling votes is in the public interest, and explain why this Court should not defer to state courts on these state law issues.

Plaintiffs have made minimal effort to meet these burdens, with a two-page memorandum of law that cites no precedent and offers no reasons for the Court to rule in their favor. For all of the reasons stated below, the Court should deny relief.

## FACTUAL BACKGROUND

The Election Code provides for three stages of county board of elections' processing of absentee and mail-in ballots.  First, of course, ballots must arrive. Second, before Election Day, ballots must be inspected and catalogued, in a "district register," to show that the elector who requested an absentee or mail-in ballot has in fact voted. *See* 25 P.S. § 3146.6(a)(1) (absentee ballots); 25 P.S. § 3150.16(a)(1) (mail-in ballots). This is a crucial step, ensuring that, on Election Day, voters who have already voted are not permitted to vote a second time: "The district register at each polling place shall clearly identify electors who have received and voted absentee ballots as ineligible to vote at the polling place, and district election officers shall not permit electors who voted an absentee ballot to vote at the polling place." § 3146.6(a)(1); *see* P.S., § 3150.16 (stating same for mail-in ballots). And third, only after ballots have arrived and been catalogued in the district register, they are pre-canvassed or canvassed on or after Election Day. *See* 25 P.S. § 3146.8. As this process makes clear, before Election Day and before pre-canvassing and canvassing, the Election Code requires county boards of elections to inspect and review absentee and mail-in ballots.

## ARGUMENT

"Preliminary injunctive relief is an 'extraordinary remedy' that courts should grant 'only in limited circumstances.'" *Murray v. City of Philadelphia*, No. 20-04018, --- F. Supp. 3d ----, 2020 WL 5006046, at *3 (E.D. Pa. Aug. 25, 2020) (denying request for TRO) (quoting *Holland v. Rosen*, 895 F.3d 272, 285 (3d Cir. 2018). "The party moving for such relief must demonstrate:

'(1) a reasonable likelihood of success on the merits; (2) irreparable harm to the applicant; (3) whether the denial of a preliminary injunction would injure the moving party more than the issuance of an injunction would harm the non-moving party; and (4) whether the grant of relief would serve the public interest.'" *Id.* (quoting *Holland*, 895 F.3d at 285–86 (citation omitted)). Plaintiffs can show none of these factors.

I.   **Plaintiffs Are Unlikely to Succeed on the Merits**

A.   **Plaintiffs Have Not Stated a Claim under the Equal Protection Clause of the Fourteenth Amendment**

Plaintiffs' equal protection claim appears to proceed in two parts. First, they say, Montgomery County violated the Election Code because, before pre-canvassing and canvassing, the County (1) informally inspected absentee and mail-in ballots and (2) permitted voters whose ballots were accompanied by potential deficiencies to cure those deficiencies. *See*, *e.g.*, Compl. ¶ 40. Second, assuming that Montgomery County violated the Election Code, that violation in turn was contrary to the Equal Protection Clause of the Fourteenth Amendment, as construed by *Bush v. Gore*, 531 U.S. 98 (2000). *See* Compl. ¶ 39. It is hornbook law, however, that "a violation of a state statute alone is not cognizable under [42 U.S.C.] § 1983" (which provides the purported cause of action for Plaintiffs' federal constitutional claims) "because § 1983 is only a remedy for violations of federal statutory and constitutional rights." *Woodard v. Andrus*, 419 F.3d 348, 353 (5th Cir. 2005); *accord D.R. v. Middle Bucks Area Vocational Technical Sch.*, 972 F.2d 1364, 1375 (3d Cir. 1992). "[I]f the core dispute concerns state law, why is this case in federal court? … Linear has of course asserted a federal theory: that the Due Process Clause entitles him to a hearing. But that seems to be a makeweight, a way of getting a state-law dispute resolved by a federal judge." *Lafayette Linear v. Village of University Park, Illinois*, 887 F.3d 842, 843 (7th Cir. 2018) (rejecting purported constitutional claims premised on state law violations). That

aside, Plaintiffs are also wrong that Montgomery County violated the Election Code and wrong that *Bush v. Gore* applies.

        1.    <u>The At-Issue Inspection and Cure Procedures Are Fully Consistent with the Election Code</u>

Plaintiffs' Complaint and TRO motion rest on flawed statutory interpretation.[1]

First, as described above, the Election Code presupposes that county boards of elections will inspect and review absentee and mail-in ballots *before* pre-canvassing and canvassing. *See* 25 Pa. C.S. § 3146.6(a)(1); § 3150.16. Thus, Plaintiffs are wrong that any preliminary inspection of an absentee or mail-in ballot constitutes "pre-canvassing." *See* Compl. ¶ 17. As the Election Code states—and as is quoted in Plaintiffs' Complaint—pre-canvassing is something different: "the inspection *and* opening of all envelopes containing official absentee ballots or mail-in ballots, the removal of such ballots from the envelopes *and* the counting, computing *and* tallying of the votes reflected on the ballots." 25 Pa. C.S. 2602(q.1) (emphasis added). The Election Code provision on which Plaintiffs rely to suggest that review before pre-canvassing is prohibited, 25 Pa. C.S. § 3146.8, is in fact silent regarding a county board of elections' ability to inspect absentee and mail-in ballots *before* pre-canvassing and canvassing. *See* § 3146.8(g)(1.1), (2). And the other provisions discussed above require inspecting absentee and mail-in ballots before

---

[1]     "[W]hen federal courts interpret state statutes in a way that raises federal constitutional questions, without the benefit of state-court consideration, 'a constitutional determination is predicated on a reading of the statute that is not binding on state courts and may be discredited at any time—thus essentially rendering the federal-court decision advisory and the litigation underlying it meaningless.'" *NAACP Philadelphia Branch v. Ridge*, No. 00-2855, 2000 WL 1146619, at *4 (E.D. Pa. Aug. 14, 2000) (quoting *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 11 (1987). Here, a state court determination may be imminent; on the evening of Election Day, Plaintiffs' counsel filed an action in Pennsylvania's Commonwealth Court raising similar issues. *See* Petition for Review in *Hamm, et al., v. Boockvar*, No. _____ (attached as Exhibit A). Nonetheless, the Court should reject Plaintiffs' obviously meritless interpretation of the Election Code.

pre-canvassing and canvassing. *See* § 3146.6(a)(1); § 3150.16. The Court should reject Plaintiffs'

invitation to impliedly restrict inspecting ballots.

Second, just as Plaintiffs cannot point to anything in the Election Code that forbids

inspection of ballots before pre-canvassing, nothing in the Election Code prohibits notifying

voters whose absentee and mail-in ballots are deficient to give those voters an opportunity to

cure those deficiencies. *See* § 3146.8. Indeed, Plaintiffs do not point to anything in the Code at

all. Plaintiffs instead truncate a portion of the Supreme Court's decision in *In re November 3,*

*2020 Gen. Election*, 149 MM 2020, --- A.3d ----, 2020 WL 6252803 (Pa. Oct. 23, 2020), to try to

create the illusion that curing is prohibited under the Code. They assert that, "[u]nlike in-person

voters, mail-in or absentee voters are not provided any opportunity to cure perceived defects in a

timely manner." Compl. Introduction & ¶ 20 (citing 2020 WL 6252803, at *6). But the full quote

shows that the Court was merely describing a federal court judge's observation that the Election

Code lacks an affirmative cure requirement:

> Judge Ranjan also considered the effect of interpreting Section 3146.8(g)(3) to
> ***require*** signature comparison. In his view, doing so would create a risk that voters
> would be disenfranchised, given that mail-in and absentee ballots are kept
> securely stored until election day when the pre-canvassing process begins, and ***the***
> ***Election Code contains no requirement that voters whose ballots are deemed***
> ***inadequately verified be apprised of this fact***. Thus, unlike in-person voters,
> mail-in or absentee voters are not provided any opportunity to cure perceived
> defects in a timely manner.

*In re November 3, 2020 Gen. Election*, 2020 WL 6252803, at *6 (emphasis added). The

Pennsylvania Supreme Court has not gone further to hold that the Election Code forbids curing,

however. *See Pennsylvania Democratic Party v. Boockvar*, 133 MM 2020, --- A.3d ----, 2020

WL 5554644, at *19-20 (Pa. Sept. 17, 2020) ("Boards are not ***required*** to implement a 'notice

and opportunity to cure' procedure for mail-in and absentee ballots that voters have filled out

incompletely or incorrectly." (emphasis added)). Instead, the Supreme Court impliedly left to the counties the decision whether to cure absentee and mail-in ballots.

The Court should not countenance Plaintiffs' proposed statutory construction based on implication-by-omission. Because the Election Code is, at worst, silent about whether the at-issue practices are or are not permitted, the Court should follow Pennsylvania's instruction to "turn to interpretive principles that govern ambiguous statutes generally and election matters specifically[,]" i.e., "be mindful of the 'longstanding and overriding policy in this Commonwealth to protect the elective franchise.'" *Id.* at *9 (quoting *Shambach v. Bickhart*, 845 A.2d 793, 798 (Pa. 2004)). "[A]lthough election laws must be strictly construed to prevent fraud, they ordinarily will be construed liberally in favor of the right to vote. Indeed, [courts'] goal must be to enfranchise and not to disenfranchise [the electorate]. Lastly, in resolving statutory ambiguity, [courts] may consider, inter alia, the occasion and necessity for, the mischief to be remedied by, and the object to be obtained by the statute." *Id.* (citations and quotations omitted).

In *Pennsylvania Democratic Party*, the Pennsylvania Supreme Court held that, even though the Election Code was ambiguous and did not explicitly permit the return of mail-in and absentee ballots via drop-box, that procedure was consistent with the Election Code's call to enfranchise voters and the "clear legislative intent underlying Act 77," which enacted vote-by-mail for all Pennsylvanians. *Id.* at *5-10 (holding drop-boxes were legal under Election Code although "neither th[e] statutory language nor any other provision of the Election Code explicitly empowers a county board of election to establish satellite mail-in ballot collection facilities or to utilize secure drop-boxes for purposes of accepting hand-delivered mail-in ballots").

Here, the Court should follow suit, holding that permitting inspecting and curing absentee and mail-in ballots before pre-canvassing is permissible under the Election Code. As described

by the Pennsylvania Supreme Court, "in expanding voting by mail, the legislature sought to streamline the process for canvassing such ballots ...." *In re November 3, 2020 Gen. Election*, 149 MM 2020, 2020 WL 6252803, at \*14 (Pa. Oct. 23, 2020). Simply put, "[t]he law … militates in favor of this Court construing the Election Code in a manner consistent with the view of [Montgomery County], as this construction of the Code favors the fundamental right to vote and enfranchises, rather than disenfranchises, the electorate." *Pennsylvania Democratic Party*, 2020 WL 5554644, at \*9.

      2.    <u>The At-Issue Inspection and Cure Procedures Do Not Violate Due Process</u>

The at-issue procedures are also fully consistent with the Constitution. One county inspecting absentee and mail-in ballots and providing an opportunity to cure, even if different from other counties' procedures, "does not burden anyone's right to vote. Instead, it makes it easier for some voters to cast their [mail-in or absentee] ballots …." *Short v. Brown*, 893 F.3d 671, 677 (9th Cir. 2018) (rejecting Equal Protection challenge); *accord Paher v. Cegavske*, No. 20-243, --- F. Supp. 3d ----, 2020 WL 2089813, at \*5 (D. Nev. Apr. 30, 2020) (Equal Protection claim fails where one county's "[p]lan may make it easier or more convenient to vote in [that] County, but does not have any adverse effects on the ability of voters in other counties to vote," and "there is no contention that … other counties could not have similarly adopted further accommodations for their residents.").

The District Court for the Western District of Pennsylvania, in rejecting a challenge to some but not all counties' use of drop boxes to collect mail-in and absentee ballots, made clear that the theory espoused by Plaintiffs here does not violate equal protection. *See Donald J. Trump for Pres., Inc. v. Boockvar*, No. 20-966, --- F. Supp. 3d ----, 2020 WL 5997680 (W.D. Pa. Oct. 10, 2020). There, the court rejected the plaintiffs' argument that was based on the premise that "the state [wa]s ***not*** imposing a restriction on ***someone else's*** right to vote[.]" *Id.* at \*44

7

(emphasis in original). The court stated that its "ruling in this regard is consistent with the many courts that have recognized that counties may, consistent with equal protection, employ entirely different election procedures and voting systems within a single state." *Id.* (collecting cases, including *Short*, described above). "And in this context, 'few (if any) electoral systems could survive constitutional scrutiny if the use of different voting mechanisms by counties offended the Equal Protection Clause.'" *Id.* (quoting *Trump v. Bullock*, --- F. Supp. 3d ----, 2020 WL 5810556, at *14 (D. Mont. Sept. 30, 2020)). Here, Montgomery County's procedures do not restrict the right to vote and are a quintessential local voting mechanism. They do not violate the Equal Protection Clause.

The only case on which Plaintiffs rely for their equal protection claim is *Bush v. Gore*. *See* Compl. ¶¶ 31, 39. Plaintiffs cite *Bush* for the proposition that "[h]aving once granted the right to vote on equal terms, the State may not, by later arbitrary and disparate treatment, value one person's vote over that of another." *Id.* (quoting *Bush*, 531 U.S. at 104-05). But *Bush* is explicitly limited to the unique circumstances presented by the 2000 election recount and the attendant issues with administering the Florida Supreme Court's statewide relief:

> The recount process, in its features here described, is inconsistent with the minimum procedures necessary to protect the fundamental right of each voter in the ***special instance of a statewide recount under the authority of a single state judicial officer. Our consideration is limited to the present circumstances, for the problem of equal protection in election processes generally presents many complexities***.

531 U.S. at 109 (emphasis added). Opining on this language, other courts have observed that "the Supreme Court expressly limited its holding in *Bush* 'to the present circumstances' of a standardless 'statewide recount under the authority of a single state judicial officer[.]'" *Trump*, 2020 WL 5997680, at *42 (citing *Bush*, 531 U.S. at 109); *see also Wise v. Circosta*, No. 20-

2104, 2020 WL 6156302, at *5 fn. 7 (4th Cir. Oct. 20, 2020) (*Bush* "is of limited precedential value.").

Moreover, after narrowly framing the question presented, the *Bush* Court underscored that its holding did not reach cases like this one. "***The question before the Court is not whether local entities, in the exercise of their expertise, may develop different systems for implementing elections***." 531 U.S. at 109 (emphasis added). This case is a quintessential example of a local entity, in the exercise of its expertise, developing a system for implementing elections.

Courts have heeded the Supreme Court's warning and avoided expanding *Bush v. Gore*'s precedential reach in cases like this. In *Lemons v. Bradbury*, 538 F.3d 1098 (9th Cir. 2008), the court observed that *Bush* was "limited to the present circumstances" before concluding that, "[e]ven were *Bush* applicable to more than the one election to which the [Supreme] Court appears to have limited it, Oregon's standard for verifying referendum signatures would be sufficiently uniform and specific to ensure equal treatment of voters." *Id.* at 1106. This was because "[t]he Secretary uniformly instructs county elections officials to verify referendum signatures by determining whether each petition signature matches the signature on the signer's voter registration card," and "all counties refused to consider extrinsic evidence" beyond the referendum and voter card signatures. *Id.* Moreover, *Lemons* rejected the plaintiffs' argument that "differences in the number of signatures rejected by various counties" demonstrated "the absence of a uniform standard," noting that, "[m]ost importantly, uniform standards can produce different results." *Id.* at 1106-07.

Finally, even if Plaintiffs were right that the at-issue procedures violated the Election Code, that violation ***still*** would not give rise to an equal protection claim.

The problem with this theory is that there does not appear to be any law to support it. Indeed, if this were a true equal-protection problem, then it would transform every

violation of state election law (and, actually, every violation of every law) into a potential federal equal-protection claim requiring scrutiny of the government's "interest" in failing to do more to stop illegal activity. This is not the law. To the contrary, it is well-established that even violations of state election laws by state officials, let alone violations by unidentified third parties, do not give rise to federal constitutional claims except in unusual circumstances.

*Trump*, 2020 WL 5997680, at *46.

Plaintiffs' equal protection theory cannot stand, because enfranchising voters does not disturb equal protection, *Bush v. Gore* does not reach the purely local conduct at-issue, and state law violations do not cause equal protection issues.

### 3.   Plaintiffs Lack Standing to Bring Their Claims

Plaintiffs are also unlikely to succeed on the merits as their claims fail to establish the "irreducible constitutional minimum of standing," *Lujan v. Defenders of Wildl*ife, 504 U.S. 555, 560 (1992), which requires a plaintiff to demonstrate the now-familiar elements of injury in fact, causation, and redressability. *See id.* at 560-61. The Supreme Court has repeatedly held that an individual plaintiff raising only a generalized grievance about government does not meet the Article III requirement of a case or controversy. *Id.* at 573-74. Plaintiffs' lack of a particularized grievance is fatal to their claim under the Equal Protection Clause. "The rule against generalized grievances applies with as much force in the equal protection context as in any other." *US. v. Hays*, 515 U.S. 737, 743 (1995). Plaintiffs' general claim that Montgomery County's election is being administered differently than other counties—without alleging any particular ***individual*** harm suffered by either Plaintiff (for example, that they were not afforded the opportunity to cure their own ballots while others were)—is not the sort of particularized injury that the Supreme Court has required for constitutional standing in elections cases. *See id.; Gill v. Whitford*, 138 S. Ct. 1916, 1933 (2018) (no standing in equal protection case when alleged injury involved "group political interests" and not "individual legal rights"). To the extent that Plaintiff Barnette alleges

that she will suffer an injury because she is "running as the candidate in the 4th Congressional District" and "[a] vote that could count in Montgomery County will not count in Berks County because of the decisions made by Defendants in violation of Pennsylvania's Election Code and the Supreme Court of Pennsylvania's holding," Compl. ¶ 35, that injury is similarly general in that is affects all candidates *equally*.

### B.   The Public Interest Does Not Support Granting Plaintiffs' Requested Relief

#### 1.   The Public Interest Weights Against Court Intervention

Plaintiffs' Complaint makes clear that, for several days, they were aware of the issues they raise in their Complaint. *See* Compl. ¶ 3. Indeed, Montgomery County's inspection practices were public knowledge at least as of October 29. *See*, *e.g.,* Jonathan Lai, *Pennsylvania struggles with how — or if — to help voters fix their mail ballots*, WTOP News, October 29, 2020 ("Officials in Montgomery and Centre Counties, for example, won't cancel flawed ballots because they want voters to be able to fix them.") Nonetheless, Plaintiffs waited until Election Day, after voters had already submitted and, if necessary, "cured" their absentee and mail-in ballot submissions in reliance on Montgomery County's representation that doing so was permissible. That alone is grounds to deny the requested injunctive relief under the doctrine of laches. Plaintiffs' delay appears to have been strategic, and their decision puts voters' fundamental right to exercise the franchise at risk. "Laches consists of two essential elements: (1) inexcusable delay in instituting suit, and (2) prejudice resulting to the defendant from such delay." *Santana Products, Inc. v. Bobrick Washroom Equip., Inc.*, 401 F.3d 123, 140 (3d Cir. 2005).

Further, "practical considerations sometimes require courts to allow elections to proceed despite pending legal challenges." *Riley v. Kennedy*, 553 U.S. 406, 409 (2008) (citing *Purcell v.*

*Gonzalez*, 549 U.S. 1, 5–6 (2006)).[2] That principle applies just as meaningfully ***after Election***

***Day***, when voters have cast their votes in reliance on the state-of-play as it existed on Election

Day. Thus, even if the Court determines that inspected or cured absentee and mail-in ballots

were cast in violation of the Election Code or Equal Protection Clause, under *Partido Nuevo*

*Progresista v. Barreto Pérez*, 639 F.2d 825 (1st Cir. 1980) (per curiam) and its progeny,[3] this

Court should refuse to intervene to address that violation.

In *Barreto Pérez*, the Supreme Court of Puerto Rico determined that a group of already-

cast absentee ballots were valid under Puerto Rico law and should be tallied. *Id.* at 826. The

plaintiff, Partido Nuevo Progresista (the "PNP"), sued in federal district court, arguing that the

State Supreme Court's order violated the PNP's First, Fifth and Fourteenth Amendment rights.

*Id.* at 827. The district court ruled in favor of the PNP, holding that the Supreme Court had

"chang[ed] the rules of the game after it ha[d] been played[.]" *Id.* "The counting of ballots after

an election which, under the rules prevalent at the time of the vote-casting were considered void

---

[2]    *See a*l*so Reynolds v. Sims*, 377 U.S. 533, 586 (1964) ("We feel that the District Court in this case acted in a most proper and commendable manner. It initially ***acted wisely in declining to stay the impending primary election in Alabama***[.] … Additionally, the court below acted with proper judicial restraint, after the Alabama Legislature had failed to act effectively in remedying the constitutional deficiencies in the State's legislative apportionment scheme, in ordering its own temporary reapportionment plan into effect, at a time sufficiently early to permit the holding of elections pursuant to that plan without great difficulty, and in prescribing a plan admittedly provisional in purpose so as not to usurp the primary responsibility for reapportionment which rests with the legislature." (emphasis added)).

[3]    *See also Rossello-Gonzalez v. Calderon-Serra*, 398 F.3d 1 (1st Cir. 2004); *Bennett v. Yoshina*, 140 F.3d 1218 (9th Cir. 1998*), as amended on denial of reh'g and reh'g en banc* (June 23, 1998); *cf.Powell v. Power*, 436 F.2d 84, 88 (2d Cir. 1970) ("[W]hile article 1, section 2 may outlaw purposeful tampering by state officials with the conduct of a primary election for a Congressional seat, we cannot believe that the framers of our Constitution were so hypersensitive to ordinary human frailties as to lay down an unrealistic requirement that elections be free of any error." (citation omitted)).

and invalid, is the practical and functional equivalent of alteration of ballots or of stuffing the ballotbox, because as in those cases, it amounts to the counting of legally inexistent votes." *Id.*

The First Circuit Court of Appeals reversed the district court and, instead, held that federal intervention was improper. *Id.* The court based its decision on the fact that the case *"*d[id] not involve a state court order that dis enfranchises voters; rather it involve[d] a Commonwealth decision that en franchises them. The PNP's claim that votes were 'diluted' by the votes of others, not that they themselves were prevented from voting." *Id.* at 828 (cleaned up). The court also emphasized that the PNP had "no … reliance interest" in a contrary "official interpretation of the local election law; no party or person is likely to have acted to their detriment by relying upon the invalidity of ballots with marks outside the ballots' drawn rectangles." *Id.* Unlike other First Circuit cases—where the ***voters were aggrieved*** because of ***their reliance***—the fact that in *Barreto Pérez* the PNP did not rely on a contrary interpretation of state law prohibited judicial intervention. At bottom, the court made clear that ***voters' reliance interests*** warrant the greatest consideration.

More recently, in *Rossello-Gonzalez v. Calderon-Serra*, 398 F.3d 1 (1st Cir. 2004), the First Circuit applied the *Barreto Pérez* rule to a similar situation. The court refused to intervene because the at-issue absentee ballots were cast in in a manner consistent with then-existing law, even though subsequently, ***after*** the election, election authorities changed positions to try to invalidate the ballots. "The case presented by the [Plaintiffs], ***even assuming that all claims alleged in their complaint could be proven***, presents even less cause for federal intervention than the circumstances which we found lacking in *Barreto Pérez*." *Id.* at 18 (emphasis added). Because there was no "clearly articulated Commonwealth policy, much less a statute, to indicate the [at-issue] ballots were invalid" at the time cast, *id.*, the Plaintiffs had no reliance interest in

throwing out the ballots. Instead, like in *Barreto Perez*, the decision to honor voters' reliance did not "disenfranchise[] voters; rather it [followed] a Commonwealth decision that en franchises them." *Id.* (quotation omitted).

This case is on all fours with *Rossello-Gonzalez* and *Barreto Pérez*. "[E]ven assuming that all claims alleged in their complaint could be proven," Plaintiffs have no reliance interests at stake – they cannot be said to have relied on the at-issue votes not being counted. *Id.* But spoiling absentee and mail-in ballots, cast and cured in good faith based on Montgomery County's outreach before Election Day, would do great damage to affected voters' reliance interests, effectively disenfranchising them. Thus, as in *Barreto Pérez* and *Rossello-Gonzalez*, the Court's refusal to intervene here will ensure the ***enfranchisement*** of voters who submitted their ballots in reliance on the actions of the Board of Elections.

2.   Even if Plaintiffs' Challenges Are Merited and Timely, the Court Should Not Spoil the At-Issue Votes

The Courts of Appeals, including the Third Circuit Court of Appeals, have recognized that substantive due process requires that "[i]f the election process itself reaches the point of patent and fundamental unfairness, a violation of the due process clause may be indicated and relief under s 1983 therefore in order." *Griffin v. Burns*, 570 F.2d 1065, 1074 (1st Cir. 1978); *see also Marks v. Stinson*, 19 F.3d 873, 888 (3d Cir. 1994) (citing *Griffin*); *Hoblock v. Albany County Bd. of Elections*, 422 F.3d 77, 98 (2d Cir. 2005) (same); *Bennett*, 140 F.3d at 1227 (same); *Roe v. State of Ala. By and Through Evans*, 43 F.3d 574, 580 (11th Cir. 1995), *certified question answered sub nom. Roe v. Mobile County Appointment Bd.*, 676 So. 2d 1206 (Ala. 1995) (same).

In *Stinson*, a candidate for Congress, William Stinson, illegally executed absentee ballot applications and then filled-out absentee ballots to ensure his victory. 19 F.3d at 877-78. After

Stinson won the election by a narrow margin, his opponent, Bruce Marks, challenged many absentee ballots in state court, *id.* at 879-80, and then filed a Section 1983 in federal court alleging constitutional violations by Stinson and his campaign. *Id.* at 878. The district court held that Marks was likely to succeed on his constitutional challenges under the First and Fourteenth Amendments and that Marks has suffered an irreparable injury. *Id.* As a result, the district court threw out ***all*** of the absentee votes cast in favor of Stinson and ordered that Marks should be certified the election's winner. *Id.*

The Third Circuit Court of Appeals reversed and remanded, holding that the district court's remedy was improper. In particular, the court emphasized that the district court erred by failing to "address the problem created by the fact that some electors who cast tainted absentee ballots undoubtedly would have cast valid votes at the polls had they not been misled (by a conspiracy knowingly supported by state actors) into believing there was a 'new way to vote.'" *Id.* at 886. In rejecting the district court's remedy, the Court of Appeals made clear that the lower court overlooked the reliance interests of the absentee voters, and that the court's "primary concern here is not to punish any individual candidate or party, but to promote the ***public's interest*** in having legislative power exercised only by those to whom it has been legally delegated. ***This interest is not served by arbitrarily ignoring the absentee vote, a substantial but undetermined portion of which was either legally cast or came from voters who would have gone to the polls but for the fraud***. Just punishment for any wrongdoing that has been perpetrated may be pursued in other proceedings; it is not the objective here." *Id.* at 888 (emphasis added). Throwing out absentee and mail-in ballots here, merely because those voters relied on the Board of Elections, would undeniably run afoul of *Stinson*.

The First Circuit Court of Appeals' decision in *Griffin*—on which *Stinson* relied heavily—further counsels against Plaintiffs' proposed remedy. In *Griffin*, after a group of voters participated in a Democratic primary election using absentee and shut-in ballots pursuant to previously allowed procedures, a losing candidate, McCormick, challenged the absentee and shut-in balloting procedures in primaries in the Rhode Island Supreme Court. 570 F.2d at 1067-78. The Supreme Court ruled in favor of McCormick, holding that absentee and shut-in balloting never should have been permitted in the primary and that the at-issue absentee and shut-in votes should be thrown out, and McCormick would be certified as the Democratic candidate. *Id.* at 1068. The losing primary candidate, Griffin, along with an absentee voter and shut-in voter, filed a federal lawsuit seeking relief from the Supreme Court order. *Id.* The court held that the absentee and shut-in voters had been unconstitutionally disenfranchised through no fault of their own, invalidated the primary election entirely, and scheduled a new primary. *Id.* at 1069.

The First Circuit Court of Appeals affirmed, holding that throwing out the absentee and shut-in ballots was not a constitutional remedy. "When a group of voters are handed ballots by election officials that, unsuspected by all, are invalid, state law may forbid counting the ballots, but the election itself becomes a flawed process. Given the closeness of the election [t]here, and the fact that the 'right of suffrage is a fundamental matter," the court was "unwilling to reject [the voters'] claim merely on the fiction that the voters had a duty, at their peril, somehow to foresee the ruling of the Rhode Island Supreme Court invalidating their ballots." *Id.* at 1076 (quoting *Reynolds v. Sims*, 377 U.S. 533, 555 (1963)). Other courts, like *Stinson* discussed above, have followed form to *Griffin. See Hoblock,* 422 F.3d at 98 ("[W]hen election officials refuse to tally absentee ballots that they have deliberately (even if mistakenly) sent to voters, such a refusal may violate the voters' constitutional rights."); *Roe*, 43 F.3d at 581 ("[T]he change

in the rules after the election would have the effect of disenfranchising those who would have voted but for the inconvenience imposed by the notarization/witness requirement.")

The Court cannot throw out all of the cured ballots and all ballots that counties inspected prior to canvassing. Even if Plaintiffs' claims were cognizable, their requested remedy violates Substantive Due Process and is contrary to well-established caselaw.

For the foregoing reasons, Plaintiffs' request for injunctive relief should be denied.

Respectfully submitted,

HANGLEY ARONCHICK SEGAL
PUDLIN & SCHILLER

Dated: November 3, 2020

By:    /s/ *Michele D. Hangley*
       Mark A. Aronchick (I.D. No. 20261)
       Michele D. Hangley (I.D. No. 82779)
       Robert A. Wiygul (I.D. No. 310760)
       John B. Hill (I.D. No. 328340)*
       One Logan Square, 27th Floor
       Philadelphia, PA 19103
       Telephone: (215) 496-7050
       Email: mhangley@hangley.com

       Milton Velez
       Office of the Solicitor
       Montgomery County Courthouse
       P.O. Box 311
       Norristown, Pa 19404
       610-278-6285
       Email: Mvelez@montcopa.org

       Philip W. Newcomer
       Montgomery County Solicitor's Office
       One Montgomery Plz, Ste 800
       P.O. Box 311
       Norristown, Pa 19404-0311
       610-278-3033
       Email: pnewcome@montcopa.org

       *Counsel for Kenneth E. Lawrence, Valerie Arkoosh, MD, MPH, and Frank Dean*

17

*Admitted in Pennsylvania; Application for admission to Eastern District of Pennsylvania Pending

## CERTIFICATE OF SERVICE

I Michele D. Hangley certify that on the 3rd day of November, 2020, a copy of the

foregoing Memorandum of Law in Opposition to Plaintiffs' Motion for Temporary Restraining

Order was served by ECF filing on all counsel.

/s/ Michele D. Hangley
Michele D. Hangley

# EXHIBIT A

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

JOSEPH D. HAMM, individually and :
as a candidate for the Pennsylvania :
State House of Representatives in the :
84th Legislative District; MIKE :
KELLY, individually and as a :
candidate for the United States House :
of Representatives 16th District; :
BILLY ALLRED; CHAD HORNER; :
CAROLYN CONNOR; and JOAN :
HAUSER, :
                      :
         Petitioners, :
                      :
    v. :
                      :
KATHY BOOCKVAR, in her official :
capacity as the Secretary of the :
Commonwealth of Pennsylvania, :
                      :
         Defendant. :

## <u>NOTICE</u>

YOU HAVE BEEN SUED IN COURT. If you wish to defend against the claims set forth in the following pages, you must take action within thirty (30) days after this Petition for Review and Notice are served, by entering a written appearance personally or by attorney and filing in writing with the Court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the Court without further notice for any money claimed in the Complaint or for any other claim or relief requested by the Plaintiff. You may lose money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW. THIS OFFICE CAN PROVIDE YOU WITH INFORMATION ABOUT HIRING A LAWYER.

IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFOMRATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE.

Dauphin County Lawyer Referral Service
213 North Front Street
Harrisburg, Pennsylvania 17101
(717) 232-7536

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

JOSEPH D. HAMM, individually and   :
as a candidate for the Pennsylvania   :
State House of Representatives in the   :
84th Legislative District; MIKE   :
KELLY, individually and as a   :
candidate for the United States House   :
of Representatives 16th District;   :
BILLY ALLRED; CHAD HORNER;   :
CAROLYN CONNOR; and JOAN   :
HAUSER,   :
  :
    Petitioners,   :
  :
   v.   :
  :
KATHY BOOCKVAR, in her official   :
capacity as the Secretary of the   :
Commonwealth of Pennsylvania,   :
  :
    Defendant.   :

## NOTICE TO PLEAD

TO: KATHY BOOCKVAR

   You are hereby notified to file a written response to the enclosed petition for review within thirty (30) days from service hereof or a judgment may be entered against you.

        Respectfully Submitted,

        DILLON, MCCANDLESS, KING,
        COULTER & GRAHAM, LLP

Dated: November 3, 2020     By: /s/ Thomas E. Breth
           Thomas W. King, III
           PA. I.D. No. 21580

tking@dmkcg.com
Thomas E. Breth
PA. I.D. No. 66350
tbreth@dmkcg.com

128 West Cunningham Street
Butler, PA 16001
724-283-2200 (phone)
724-283-2298 (fax)

*Counsel for Petitioners*

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

JOSEPH D. HAMM, individually and         :
as a candidate for the Pennsylvania      :
State House of Representatives in the     :
84th Legislative District; MIKE          :
KELLY, individually and as a             :
candidate for the United States House    :
of Representatives 16th District;        :
BILLY ALLRED; CHAD HORNER;               :
CAROLYN CONNOR; and JOAN                 :
HAUSER,                                  :
                                         :
        Petitioners,             :
                                         :
    v.                                  :
                                         :
KATHY BOOCKVAR, in her official          :
capacity as the Secretary of the         :
Commonwealth of Pennsylvania,            :
                                         :
        Defendant.               :

## PETITION FOR REVIEW
## IN THE NATURE OF A COMPLAINT IN EQUITY

### INTRODUCTION

1.    On November 2, 2020, a day before the date of the general election, and right before pre-canvassing was scheduled to begin, Defendant, Kathy Boockvar, sent extraordinary instructions to every county in the Commonwealth of Pennsylvania in contravention of the Election Code. The email was entitled, "Important DOS Email – Clarification regarding Ballots Set Aside During Pre-canvass." A copy is attached hereto and made a part hereof as Exhibit "A."

1

## STATEMENT OF JURISDICTION

2.     This Court has original jurisdiction over this action pursuant to 42 Pa.C.S. § 761(a)(1).

## PARTIES SEEKING RELIEF

3.     Petitioner, Joseph D. Hamm, is a candidate for the Pennsylvania State House of Representatives in the 84th Legislative District.

4.     Petitioner, Mike Kelly, is a candidate for the United States House of Representatives 16th District.

5.     Petitioner, Billy Allred, is a voter from Union County, Pennsylvania.

6.     Petitioner, Chad Horner, is a voter from Jefferson County, Pennsylvania.

7.     Petitioner, Carolyn Connor, is a voter from Union County, Pennsylvania.

8.     Petitioner, Joan Hauser, is a voter from Lancaster County, Pennsylvania.

## PARTY WHOSE ACTION IS AT ISSUE

9.     Respondent, Kathy Boockvar, in her official capacity as the Secretary of the Commonwealth of Pennsylvania, issued guidance in contravention of the Election Code through her office on election day, November 3, 2020. *See* Ex. A.

## STATEMENT OF MATERIAL FACTS

10.     Today, November 3, 2020, is the general election.

11.     Votes are currently being cast.

12.     Votes are also currently being "pre-canvassed."

13.     Under Section 3146.8 of the Pennsylvania Election Code, "[t]he county board of elections shall meet no earlier than seven o'clock A.M. on election day to pre-canvass all ballots received prior to the meeting. A county board of elections shall provide at least forty-eight hours' notice of a pre-canvass meeting by publicly posting a notice of a pre-canvass meeting on its publicly accessible Internet website. One authorized representative of each candidate in an election and one representative from each political party shall be permitted to remain in the room in which the absentee ballots and mail-in ballots are pre-canvassed. **No person observing, attending or participating in a pre-canvass meeting may disclose the results of any portion of any pre-canvass meeting prior to the close of the polls**." 25 P.S. § 3146.8 (emphasis added).

14.     Further, on October 23, 2020, the Pennsylvania Supreme Court stated that, "[t]hus, unlike in-person voters, mail-in or absentee voters are not provided any opportunity to cure perceived defects in a timely manner." *In re November 3, 2020 Gen. Election*, 149 MM 2020, 2020 WL 6252803, at *6 (Pa. Oct. 23, 2020).

15.     Despite the above, Respondent issued guidance on election date stating, "[t]o facilitate communication with these voters, the county boards of elections should provide information to party and candidate representatives during the pre-canvass that identifies the voters whose ballots have been rejected and should promptly update the SURE system." *See* Ex. A.

16.     Respondent's guidance is in clear contravention of 25 P.S. § 3146.8 and the Pennsylvania Supreme Court's decision in *In re November 3, 2020 Gen. Election*, 149 MM 2020, 2020 WL 6252803, at *6 (Pa. Oct. 23, 2020) because it allows voters an opportunity to cure perceived defects.

17.     Other counties in the Commonwealth of Pennsylvania; namely, Blair County, Berks County, Lancaster County, Carbon County, Clinton County, Lycoming County, Dauphin County, and Perry County all have refused to accept Respondent's guidance because it is contravention of the Election Code.

18.     Indeed, as the Supreme Court so stated, "mail-in…voters are not provided any opportunity to cure perceived defects." *Id.*

19.     Respondent's guidance allows voters to cure their defects.

20.     Respondent's guidance creates a scenario where voters have two conflicting votes.

21.     Respondent's guidance violates the pre-canvassing provisions of the Election Code.

4

22.     If Respondent's guidance is allowed to continue, it creates a high risk of jeopardizing the integrity of the November 3, 2020 general election.

### COUNT I – DECLARATORY AND INJUNCTIVE RELIEF

23.     Petitioners incorporate the foregoing paragraphs as if fully set forth at length.

24.     Respondent has a duty to comply with the laws of the Commonwealth of Pennsylvania.

25.     Petitioners have no adequate remedy at law to redress the harm as a result of Respondent's violation of the Pennsylvania Election Code and holdings of the Pennsylvania Supreme Court.

26.     Injunctive relief is necessary to prevent the substantial injury and immediate and irreparable harm that Petitioners would suffer if Respondent is permitted to violate the laws of the Commonwealth of Pennsylvania.

27.     A greater injury would occur in refusing the injunction than granting it because the Respondent's actions increase the risk of jeopardizing the integrity of the November 3, 2020 general election.

WHEREFORE, Petitioners respectfully request entry of an order in their favor and against Respondent prohibiting Respondent from permitting invalidly submitted absentee and mail-in ballots to be "cured" by the submission of provisions ballots and prohibiting Respondent from disclosing identifying information about voters

who have submitted ballots that must be rejected for non-compliance with the Pennsylvania Election Code.

Respectfully Submitted,

**DILLON, McCANDLESS, KING, COULTER & GRAHAM, LLP**

Dated: November 3, 2020

By: /s/ Thomas E. Breth
      Thomas W. King, III
      PA. I.D. No. 21580
      tking@dmkcg.com
      Thomas E. Breth
      PA. I.D. No. 66350
      tbreth@dmkcg.com

128 West Cunningham Street
Butler, PA 16001
724-283-2200 (phone)
724-283-2298 (fax)

*Counsel for Petitioners*

6

**Sent:** Monday, November 2, 2020 8:38 PM
**To:** Marks, Jonathan
**Subject:** Important DOS Email - Clarification regarding Ballots Set Aside During Pre-canvass

*** This is an external email. Please use caution when clicking on links and downloading attachments ***

Dear County Election Directors,

The Department of State has been asked whether county boards of elections can provide information to authorized representatives and representatives of political parties during the pre-canvass about voters whose absentee and mail-in ballots have been rejected. The Department issued provisional ballot guidance on October 21, 2020, that explains that voters whose completed absentee or mail-in ballots are rejected by the county board for reasons unrelated to voter qualifications may be issued a provisional ballot. To facilitate communication with these voters, the county boards of elections should provide information to party and candidate representatives during the pre-canvass that identifies the voters whose ballots have been rejected and should promptly update the SURE system.

Kind regards,

Jonathan M. Marks
Deputy Secretary for Elections & Commissions
Pennsylvania Department of State
302 North Office Building | Harrisburg, PA 17120
☎ 717.783.2035  🖨 717.787.1734
✉ jmarks@pa.gov



**pennsylvania**
DEPARTMENT OF STATE



EXHIBIT

A

## ATTORNEY VERIFICATION

I, Thomas E. Breth, am authorized to make this verification. I verify that the statements made in the foregoing document are true and correct to the best of my knowledge, information and belief. I understand that the statements herein are made subject to the penalties of perjury of 18 Pa.C.S. § 4904 relating to unsworn falsification to authorities.

/s/ Thomas E. Breth
Thomas E. Breth

## CERTIFICATE OF COMPLIANCE

I certify that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.


/s/ Thomas E. Breth
Thomas E. Breth