**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| Kathy Barnette, *et al.*,<br><br>              Plaintiffs,<br><br>   v.<br><br>Kenneth E. Lawrence Jr., Chair of the Montgomery County Board of Elections and Vice Chair of the Montgomery County Board of Commissioners, in his official capacity, *et al.*,<br><br>              Defendants. | No. 20-cv-5477<br><br>Judge Petrese B. Tucker |

**PROPOSED INTERVENOR-DEFENDANT'S BRIEF IN SUPPORT OF MOTION TO INTERVENE**

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1
BACKGROUND ................................................................................................................... 2
      A.    Pennsylvania's Mail-in and Absentee Ballot Canvassing Procedures ........... **Error! Bookmark not defined.**
      B.    The Requested Relief ............................................ **Error! Bookmark not defined.**
ARGUMENT ........................................................................................................................ 4
      I.    The DNC is entitled to intervene as of right. ........................................................ 4
          A.    The Motion is timely. ................................................................................... 4
          B.    The DNC has a significant protectable interest in the outcome of the litigation. ...................................................................................................... 4
          C.    Denial of the motion to intervene will impair the DNC's ability to protect its interests. ................................................................................................... 6
          D.    The DNC's interests are not adequately represented by Defendants .......... 7
      II.    In the alternative, permissive intervention is appropriate. ..................................... 8
CONCLUSION ..................................................................................................................... 8

## INTRODUCTION

For weeks, counties across Pennsylvania have been receiving an unprecedented volume of mail-in and absentee ballots. This morning, as required by state law, election officials began canvassing and pre-canvassing those ballots. At the same time, Kathy Barnette and Clay Breece ("Plaintiffs") filed this lawsuit challenging Montgomery County's election procedures. Plaintiffs ask this Court—after the pre-canvass has already begun—to upend and invalidate lawful procedures. Plaintiffs' claims are too late, rife with procedural deficiencies that preclude their being raised here, and meritless.

As a national committee dedicated to electing local, state, and national candidates of the Democratic Party to public office throughout the United States, including in Pennsylvania, the Democratic Services Corporation/Democratic National Committee (the "DNC") has a significant and protectable interest in the outcome of this litigation. Among the DNC's members and constituents are eligible voters in Pennsylvania, and in Montgomery County, who have submitted absentee and mail-in ballots. Some of these voters, including the DNC's members and constituents, will be disenfranchised if Plaintiffs achieve the outcome they seek, which in turn, will harm the DNC's core mission and undermine its chances for electoral success. Further, the DNC's interests are not adequately represented in this litigation because the county official defendants ("Defendants"), who are representatives of Montgomery County rather than participants in the election, do not have the same pressing interest in the protection of the franchise.

Pursuant to Federal Rule of Civil Procedure 24, the DNC seeks intervention as of right or, in the alternative, permissive intervention, in order to protect its members and constituents from the substantial likelihood of disenfranchisement that would result from Plaintiffs' requested relief. In accordance with Rule 24(c), this Motion is accompanied by a proposed Answer-in-Intervention, which is attached as Exhibit A.

1

**BACKGROUND**

Montgomery County's ballot intake procedure complies with both the Pennsylvania Election Code and the practices of county election boards across the Commonwealth. The Pennsylvania Legislature has delegated certain powers and duties related to the conduct of elections to county boards of elections. County boards are charged with "procur[ing] ballots" for use in elections. 25 P.S. § 2642(c). County boards of elections are also charged with receiving "the returns of all primaries and elections," and "canvass[ing] and comput[ing] the same." 25 P.S. § 2642(k). County boards must also store mail-in and absentee ballots safely "until they are to be canvassed." 25 P.S. § 3146.8(a).

Handling and reviewing the envelopes of mail-in and absentee ballots does not amount to pre-canvassing or canvassing those ballots. Pennsylvania defines "pre-canvass" as "the *inspection and opening* of all envelopes containing official absentee ballots or mail-in ballots, the *removal of such ballots from the envelopes* and the *counting, computing and tallying of the votes* reflected on the ballots." 25 P.S. § 2602(q.1) (emphasis added). The Election Code defines "canvass" as "the gathering of ballots after the final pre-canvass meeting and the counting, computing and tallying of the votes reflected on the ballots," 25 P.S. § 2602(a.1), and even *requires* county boards of elections to examine mail ballots as they are received. *See* 25 P.S. § 3150.16(b)(1) ("The district register at each polling place shall clearly identify electors who have received and voted mail-in ballots . . . ."); *see also* Pa. Dep't of State, Guidance Concerning Examination of Absentee And Mail-In Ballot Return Envelopes (Sept. 11, 2020) at 2, https://www.dos.pa.gov/VotingElections/OtherServicesEvents/Documents/Examination%20of%20Absentee%20and%20Mail-In%20Ballot%20Return%20Envelopes.pdf (noting that, during the process of "approving ballots to be counted during pre-canvassing," county boards "shall examine

the Voter's Declaration on the outer envelope of each returned ballot and compare the information on the outer envelope, i.e., the voter's name and address, with the information contained in the "Registered Absentee and Mail-in Voters File, the absentee voter's list and/or the Military Veterans' and Emergency Civilians Absentee Voters File.'"). It also requires county boards of elections to segregate certain absentee and mail-in ballots before canvassing begins. *See, e.g.*, 25 P.S. § 3146.8(d) (requiring ballots to be set aside "[w]henever" appropriate evidence indicates the voter has died prior to the opening of the ballots); § 3146.8(g)(5) (requiring ballots cast by challenged electors to be placed "in a secure, safe and sealed container"). Clearly, no provision of the Election Code prevents county boards of elections from handling or reviewing ballot envelopes before pre-canvassing. *See generally* 25 P.S. § 3146.

While Montgomery County's ballot intake procedure is consistent with the Election Code, Plaintiffs' requested relief is not. Plaintiffs ask this court to "declar[e] spoiled" lawfully-cast mail-in and absentee ballots. But the Election Code contemplates no such treatment of lawfully cast ballots. *See* Act of Mar. 27, 2020, P.L. 41, No. 12 (deleting from the election code the explicit reference to the challenge process for absentee and mail-in ballots). Plaintiffs ask the Court to allow them to contest ballots under the guise of a baseless constitutional harm, and ask the Court to set aside and spoil certain ballots that they have identified. *See* Complaint, Prayer for Relief. As Intervenors intend to demonstrate, Plaintiffs lack standing and a constitutional injury, to say nothing of various other considerations that should cause this Court to deny their relief and dismiss their Complaint.

**ARGUMENT**

**I.     The DNC is entitled to intervene as of right.**

Intervention as of right must be granted when (1) the motion to intervene is timely, (2) the proposed intervenors possess an interest in the subject matter of the action; (3) denial of the motion to intervene would affect or impair the proposed intervenors' ability to protect their interests, and (4) the proposed intervenor's interests are not adequately represented by the existing parties to the lawsuit. Fed. R. Civ. P. 24(a)(2); *Harris v. Pernsley*, 820 F.2d 592, 596 (3d Cir. 1987). The DNC meets each of these factors.

**A.     The Motion is timely.**

In considering whether intervention is timely, this Court considers: (1) "the reason for the delay"; (2) "the stage of the proceeding"; and (3) "the prejudice that delay may cause the parties." *Benjamin ex rel. Yock v. Dep't of Pub. Welfare of Pa.*, 701 F.3d 938, 949 (3d Cir. 2012) (quoting *Mountain Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc.*, 72 F.3d 361, 369 (3d Cir. 1995)). Each factor demonstrates the Motion's timeliness.

First, there was no delay. Plaintiffs filed their Complaint today; this Motion follows the same day. Second, the DNC sought intervention at the earliest possible stage of this action. No motions have been fully briefed; no hearings have been held. And third, as a result, no party can legitimately claim that intervention by the DNC would cause any prejudice, including delay. Under these circumstances, the Court should find the Motion timely. *See, e.g.*, *In re Cmty. Bank of N. Virginia*, 418 F.3d 277, 314 (3d Cir. 2005) (finding intervention timely where, among other things, substantive hearing had yet been conducted).

**B.     The DNC has a significant protectable interest in the outcome of the litigation.**

The DNC plainly has a "significantly protectable" interest in the orderly administration of Pennsylvania's election processes, especially as they relate to procedures affecting the counting of

mail ballots. This is because Defendants' proposed relief carries with it the prospect of disenfranchising the DNC's members who have submitted such ballots. *See Crawford v. Marion Cty. Election Bd.*, 553 U.S. 181, 189 n.7 (2008) (agreeing with the unanimous view of the Seventh Circuit that the Indiana Democratic Party had standing to challenge a voter identification law that risked disenfranchising its members).

The DNC has dedicated significant institutional resources to encourage its supporters and constituents to vote by mail, resources that could have been directed to other states or to encouraging in-person voting in Pennsylvania had the DNC been aware of the potential for lawfully cast ballots to be declared spoiled, as Plaintiffs request. *See, e.g.*, *Disability Rights Pa. v. Pennsylvania Dep't of Human Servs.*, No. 1:19-CV-737, 2020 WL 1491186, at *5 (M.D. Pa. Mar. 27, 2020) (noting an organization has standing where it can show actions "perceptibly impaired" the organization's ability to provide its primary services or carry out its mission and have resulted in a diversion of resources).

The DNC also has a significantly protectable interest in the election of Democratic candidates up and down the ballot, and the threatened challenge to the counting of these ballots risks harming those candidates' electoral prospects. This is a significantly protectable interest. *Cf. Schiaffo v. Helstoski*, 492 F.2d 413, 417 (3d Cir. 1974) (holding defeated candidate had standing to challenge right of his opponent to send constituent mail postage-free as "anybody who personally intends to oppose the candidacy of an incumbent congressman or who supports a person mounting such a challenge has a vital interest in securing the cessation of that incumbent's activities . . . that arguably promote his electoral prospects").

### C. Denial of the motion to intervene will impair the DNC's ability to protect its interests.

There can be no doubt that disposition "of the action may as a practical matter impair or impede" the DNC's ability to protect its interests. Fed. R. Civ. P. 24(a)(2). When considering this factor, courts "look[] to the 'practical consequences' of denying intervention." *Nat. Res. Def. Council v. Costle*, 561 F.2d 904, 909 (D.C. Cir. 1977) (quoting *Nuesse v. Camp*, 385 F.2d 694, 702 (D.C. Cir. 1967)); *see also Brody By & Through Sugzdinis v. Spang*, 957 F.2d 1108, 1123 (3d Cir. 1992) (considering consequences of disposition) Intervention is warranted if applicant can demonstrate "a tangible threat to [its] legal interest." *United States v. Alcan Aluminum, Inc.*, 25 F.3d 1174, 1185 n. 15 (3d Cir. 1994) (quoting *Brody*, 957 F.2d at 1123).

When, as here, a proposed intervenor has a protectable interest in the outcome of the litigation, courts generally have "little difficulty concluding" that their interests will be impaired. *California ex rel. Lockyer v. United States*, 450 F.3d 436, 442 (9th Cir. 2006); *see also Brody*, 957 F.2d at 1123 (noting that if the intervenor "can show that they possess a legal interest in this action, then it naturally follows that such an interest would be affected by this litigation").

There can be no doubt that disposition of this matter has the potential to impair the DNC's ability to protect its interests. Indeed, courts routinely grant intervention to political party committees in cases where plaintiffs seek to impose restrictions on voting access. *See, e.g.*, *Paher v. Cegavske*, No. 20-cv-00243, 2020 WL 2042365, at *4 (D. Nev. April 28, 2020) (granting DNC intervention in election law case brought by interest group); *see Donald J. Trump for President*, Inc., No. 20-cv-10753, 2020 WL 5229209, at *1 (D. N.J. Sept. 01, 2020) (granting Democratic Congressional Campaign Committee intervention in lawsuit by Republican candidate and party entities); *Issa v. Newsom*, No. 20-cv-01044, 2020 WL 3074351, at *3 (E.D. Cal. June 10, 2020)

(granting Democratic Congressional Campaign Committee and California Democratic Party intervention). This Court should do the same.

### D. The DNC's interests are not adequately represented by Defendants.

The DNC's interests diverge significantly from the county election board's interests in this case, and thus are not adequately protected. *Brody*, 957 F.2d at 1123 (quoting *Hoots v. Pennsylvania*, 672 F.2d 1133, 1135 (3d Cir. 2982)). In establishing this factor, "[t]his burden is generally 'treated as minimal' and requires the applicant to show 'that representation of his interest '*may be*' inadequate." *Commonwealth of Pa. v. President United States of Am.*, 888 F.3d 52, 60 (3d Cir. 2018) (quoting *Mountain Top Condo Ass'n*, 72 F.3d at 368).

To be sure, in cases in which a government entity is a party to the suit, a presumption of adequacy may arise. *See id.* But, when, as here, the government entity's positions "are necessarily colored by its view of the public welfare rather than the more parochial views of a proposed intervenor whose interest is personal to it, the burden [of establishing inadequacy of representation] is comparatively light." *Kleissler v. U.S. Forest Serv.*, 157 F.3d 964, 972 (3d Cir. 1998)*; see also id.* ("[W]hen the proposed intervenors' concern is not a matter of 'sovereign interest,' there is no reason to think the government will represent it[.]" (quoting *Mausolf v. Babbitt*, 85 F.3d 1295, 1303 (8th Cir. 1996))).

Defendants' interest is defined solely by their statutory duties to conduct elections. But the DNC's interest is broader. The DNC seeks to ensure that as many of its voters can vote as possible. Because their interests diverge, the election official Defendants cannot adequately represent the DNC's interests. *See Issa*, 2020 WL 3074351, at *3 ("While Defendants' arguments turn on their inherent authority as state executives and their responsibility to properly administer election laws, the [intervenor is] concerned with ensuring their party members and the voters they represent have

7

the opportunity to vote in the upcoming federal election, advancing their overall electoral prospects, and allocating their limited resources to inform voters about the election procedures.").

## II.     In the alternative, permissive intervention is appropriate.

If the Court does not grant intervention as a matter of right, the DNC respectfully requests that the Court exercise its discretion to allow it to intervene under Rule 24(b). The Court has broad discretion to grant a motion for permissive intervention when it determines that: (1) the proposed-intervenor's claim or defense and the main action have a question of law or fact in common, and that (2) the intervention will not unduly delay or prejudice the adjudication of the original parties' rights. *See* Fed. R. Civ. P. 24(b)(1)(B) and (b)(3); *Brody*, 957 F.2d at 1115-16; *League of Women Voters of Va. v. Virginia State Bd. of Elections*, No. 6:20- CV-00024, 2020 WL 2090678, at *5 (W.D. Va. Apr. 30, 2020). Indeed, courts that deny intervention as of right often grant permissive intervention. *See, e.g.*, *McKay v. Heyison*, 614 F.2d 899, 906 (3d Cir. 1980).

The DNC meets the requirements of permissive intervention. First, the DNC will inevitably raise common questions of law and fact including whether Plaintiffs have standing, whether Montgomery County's ballot sorting procedures violate the Equal Protection Clause, and whether voters will suffer harm from an adverse ruling. Second, and for the reasons set forth above, the motion to intervene is timely, and, given the early stage of this litigation, intervention will not unduly delay or prejudice the adjudication of the rights of the original parties. While the DNC has demonstrated that it is entitled to intervention as of right, permissive intervention is also warranted here.

## CONCLUSION

For the reasons stated, the DNC is entitled to intervention as of right. In the alternative, it requests that the Court grant permissive intervention.

Dated: November 3, 2020                        Respectfully submitted,

**PERKINS COIE, LLP**

By: */s/ Edward Rogers*

Edward Rogers
Terence M. Grugan
**Ballard Spahr LLP**
1735 Market Street, 51st Floor
Philadelphia, PA 19103-7599
Telephone: (215) 864-8659
Facsimile: (215)864-8999
RogersE@ballardspahr.com
ClarkR@ballardspahr.com

Marc E. Elias*
Uzoma N. Nkwonta*
John M. Geise*
Stephanie I. Command*
**PERKINS COIE LLP**
700 13th Street, NW, Suite 800
Washington, D.C. 20005-3960
Telephone: (202) 654-6200
Facsimile: (202) 654-6211
MElias@perkinscoie.com
UNkwonta@perkinscoie.com
JGeise@perkinscoie.com
SCommand@perkinscoie.com

*Counsel for Proposed Intervenor Democratic National Committee*

*\*Motions for Admission Pro Hac Vice Forthcoming*

9

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing document, memorandum in support, and proposed order were electronically filed on November 3, 2020, via the Court's CM/ECF System, which will send notification of such filing to counsel of record for Plaintiff.

/s/ *Edward Rogers*
Counsel for Proposed Intervenor