## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Kathy Barnette, *et al.*,<br><br>              Plaintiffs,<br><br>    v.<br><br>Kenneth E. Lawrence Jr., Chair of the Montgomery County Board of Elections and Vice Chair of the Montgomery County Board of Commissioners, in his official capacity, *et al.*,<br><br>              Defendants. | No. 20-cv-5477<br>Judge Timothy J. Savage |

**INTERVENOR-DEFENDANTS DNC'S OPPOSITION TO PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER**

**TABLE OF CONTENTS**

I. INTRODUCTION ................................................................................................................ 1
II. BACKGROUND .................................................................................................................. 1
III. ARGUMENT ....................................................................................................................... 3
   A. Plaintiffs are not entitled to a temporary restraining order. ............................................. 3
      1. Plaintiffs are not likely to succeed on the merits. ......................................................... 3
      2. Plaintiffs will not suffer irreparable harm absent relief. ............................................... 7
      3. The public interest and balance of equities weigh in favor of denying the requested injunction. .................................................................................................................... 7
IV. CONCLUSION .................................................................................................................... 8

## I. INTRODUCTION

Plaintiffs ask this Court—based on their Complaint, a two-page memorandum (Doc. 11), and three declarations—to issue relief that would upend lawful election procedures and disenfranchise Montgomery County voters. Even worse, they waited until the last minute to do so. Their Complaint alleges that the Montgomery County board of elections has been reviewing ballot envelopes and notifying voters of deficiencies for at least two weeks—none of which is prohibited by law—yet Plaintiffs inexplicably delayed filing their lawsuit until Election Day, after the pre-canvass was already well underway, all but ensuring that voters affected by the sweeping injunction they seek will not have an opportunity to cast an effective ballot in this election. These dilatory tactics foreclose any right to equitable relief, much less the extraordinary injunction Plaintiffs have requested from this Court. But their claims also suffer several legal defects: They lack standing, and they cannot make out a cognizable equal protection claim. Plaintiffs have also failed to demonstrate any future irreparable harm to warrant an injunction, and both the public interest and the equities strongly counsel against their last-minute challenge. In the end, Plaintiffs have failed to carry their burden to satisfy any of the factors this Court must consider in determining whether to issue a temporary restraining order. This Court should therefore deny the requested relief.

## II. BACKGROUND

The Pennsylvania Legislature has delegated certain powers and duties related to the conduct of elections to county boards of elections. County boards are charged with "procur[ing] ballots" for use in elections, 25 P.S. § 2642(c); receiving "the returns of all primaries and elections," and "canvass[ing] and comput[ing] the same," 25 P.S. § 2642(k); and storing mail-in and absentee ballots safely "until they are to be canvassed," 25 P.S. § 3146.8(a).

Handling and reviewing the envelopes of mail-in and absentee ballots does not amount to pre-canvassing or canvassing those ballots. The Election Code defines "pre-canvass" as "the *inspection and opening* of all envelopes containing official absentee ballots or mail-in ballots, the *removal of such ballots from the envelopes and the counting, computing and tallying of the votes* reflected on the ballots." 25 P.S. § 2602(q.1) (emphasis added). The Election Code defines "canvass" as "the gathering of ballots after the final pre-canvass meeting and the counting, computing and tallying of the votes reflected on the ballots," 25 P.S. § 2602(a.1). Indeed, before pre-canvassing or canvassing those ballots, the Election Code requires county boards of elections to examine mail ballots as they are received. *See* 25 P.S. § 3150.16(b)(1) ("The district register at each polling place shall clearly identify electors who have received and voted mail-in ballots . . . ."); *see also* Pa. Dep't of State, Guidance Concerning Examination of Absentee And Mail-In Ballot Return Envelopes (Sept. 11, 2020) at 2, https://www.dos.pa.gov/VotingElections/OtherServicesEvents/Documents/Examination%20of%20Absentee%20and%20Mail-In%20Ballot%20Return%20Envelopes.pdf (noting that, during the process of "approving ballots to be counted during pre-canvassing," county boards "shall examine the Voter's Declaration on the outer envelope of each returned ballot and compare the information on the outer envelope"). The Election Code also requires county boards of elections to segregate certain absentee and mail-in ballots before canvassing begins. *See, e.g.*, 25 P.S. § 3146.8(d) (requiring ballots to be set aside "[w]henever" appropriate evidence indicates the voter has died prior to the opening of the ballots); § 3146.8(g)(5) (requiring ballots cast by challenged electors to be placed "in a secure, safe and sealed container").

But no provision of the Election Code prevents county boards of elections from handling or reviewing ballot envelopes before pre-canvassing. *See generally* 25 P.S. § 3146.

Notwithstanding their failure to cite a single law that forecloses the actions they complain of here, Plaintiffs ask this Court to "declar[e] spoiled" mail-in and absentee ballots and disenfranchise voters in the process.

### III.     ARGUMENT

**A.     Plaintiffs are not entitled to a temporary restraining order.**

To obtain a temporary restraining order, Plaintiffs must make a clear showing that they are (1) "likely to succeed on the merits," (2) "likely to suffer irreparable harm in the absence of preliminary relief," (3) that the "balance of equities tip[s]" in their favor, or (4) "that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *see also Benner v. Wolf*, 461 F. Supp. 3d 154, 160 (M.D. Pa. 2020) ("Courts apply one standard . . . regardless of whether a petitioner requests a temporary restraining order . . . or preliminary injunction."). In seeking mandatory injunctive relief, Plaintiffs bear a "particularly heavy burden," *Acierno v. New Castle Cty.*, 40 F.3d 645, 653 (3d Cir. 1994), that requires them to "show a substantial likelihood of success on the merits and that their 'right to relief [is] indisputably clear.'" *Hope v. Warden York Cty. Prison*, 972 F.3d 310, 320 (3d Cir. 2020) (quoting *Trinity Indus., Inc. v. Chi. Bridge & Iron Co.*, 735 F.3d 131 139 (3d Cir. 2013) (alterations in original). In the end, and for the reasons set forth below, Plaintiffs have not met their burden of "establish[ing] every element in [their] favor" and so "the grant of a preliminary injunction is inappropriate." *See P.C. Yonkers, Inc. v. Celebrations the Party & Seasonal Superstore, LLC.*, 428 F.3d 504, 508 (3d Cir. 2005).

**1.     Plaintiffs are not likely to succeed on the merits.**

**a.     The Plaintiffs lack standing.**

The threadbare recitations in Plaintiffs' Complaint fails to allege that they have suffered an actual injury-in-fact, and fall well short of Article III's requirements to establish standing. *New*

-3-

*Jersey Physicians, Inc. v. President of U.S.*, 653 F.3d 234, 238 (3d Cir. 2011) (holding Article III standing requires concrete and particularized injuries that are actual and imminent, not conjectural or hypothetical). First, the Complaint and motion for temporary restraining order fails to allege any concrete injury to Plaintiff Barnette as a candidate. Plaintiffs simply allege that Barnette "is running as the candidate in the 4th Congressional District for the Republican Party, and she will be at a significant disadvantage as the 4th Congressional District consists of both Montgomery County and Berks County." Compl. ¶ 35. Plaintiffs claim this disadvantage will accrue because "[a] vote that could count in Montgomery County will not count in Berks County because of the decisions made by Defendants in violations of Pennsylvania's Election Code and the Supreme Court of Pennsylvania's holding." *Id*.

But this purported injury is purely hypothetical. While harm to electoral prospects can be a cognizable injury in the Third Circuit, *see Schiaffo v. Helstoski*, 492 F.2d 413, 417 (3d Cir. 1974), Plaintiff Barnette has failed to demonstrate that she suffered any such injury. She does not, and cannot, allege that voters who cast absentee or mail-in ballots in Montgomery County are any more likely to be a vote against her than for her. And it bears mentioning that Plaintiff Barnette does not seek relief that would give her constituents more opportunities to vote; instead she seeks to nullify votes without any showing that such actions will benefit her.

Nor have Plaintiffs have established standing as voters. Plaintiffs purport to bring claims for all electors in Montgomery and Berks County, an assertion they make only in the caption to their Complaint and never explain, but nowhere do Plaintiffs allege that *they themselves* voted absentee, much less that their ballots were treated differently by Defendants. At best, their claim amounts to nothing more than a "generalized grievance against governmental conduct," which is insufficient to demonstrate standing. *United States v. Hays*, 515 U.S. 737, 745 (1995).

### b. Plaintiffs fail to sufficiently allege, and are not likely to succeed on, their equal protection claim.

Plaintiffs have also not demonstrated a "substantial likelihood of success on the merits" of their equal protection claim. *Hope*, 972 F.3d at 320. They allege that some voters (again, not Plaintiffs themselves) are being treated differently based on county election procedures, and assume incorrectly that any non-uniform practice equates to a constitutional violation. This argument badly misreads *Bush v. Gore*, 531 U.S. 98 (2000), the primary authority on which they rely. *See* Compl. ¶ 39 (citing *Bush*, 531 U.S. at 104-05). As even the Court in *Bush* made clear, equal protection does not require an absolute mechanical similarity in procedures. *Bush,* 531 U.S. at 109; *see also Jackman v. Rosenbaum Co.,* 260 U.S. 22, 31 (1922) (holding equal protection does not demand the imposition of "mechanical compartments of law all exactly alike"). Rather, "the Constitution is sufficiently flexible to permit its requirements to be considered in relation to the contexts in which they are invoked." *Merchants Nat'l Bank of Mobile v. Dredge Gen. G. L. Gillespie*, 663 F.2d 1338, 1343 (5th Cir. 1981). And "few (if any) electoral systems could survive constitutional scrutiny if the use of different voting mechanisms by counties offended the Equal Protection Clause." *Trump v. Bullock*, ⎯⎯ F.3d ⎯⎯, ⎯⎯, 2020 WL 5810556, at *14 (D. Mont. Sept. 30, 2020).

Indeed, the Western District of Pennsylvania recently rejected a similar equal protection claim challenging allegedly non-uniform county board procedures, and its reasoning is instructive. *See Donald J. Trump for President, Inc. v. Boockvar*, No. 2:20-CV-966, 2020 WL 5997680 (W.D. Pa. Oct. 10, 2020). The court there explained that *Bush* itself permits county differentiation, noting that "the Supreme Court took pains to clarify that the question before it was 'not whether local entities, in the exercise of their expertise, may develop different systems for implementing elections.'" *Boockvar*, 2020 WL 5997689, at *45 (quoting *Bush,* 531 U.S. at 109). So too here. At

most, Plaintiffs allege that counties are engaging in different systems for pre-canvassing, and suggest those systems offend the Equal Protection Clause. They do not, and Plaintiffs' assertion that Montgomery County officials are violating state law—while also false—does not amount to a constitutional violation. *See, e.g.*, *Shipley v. Chicago Bd. of Election Commissioners*, 947 F.3d 1056, 1062 (7th Cir. 2020) ("A violation of state law does not state a claim under § 1983, and, more specifically, a deliberate violation of state election laws by state election officials does not transgress against the Constitution."); *Martinez v. Colon*, 54 F.3d 980, 989 (1st Cir. 1995) ("[T]he Constitution is not an empty ledger awaiting the entry of an aggrieved litigant's recitation of alleged state law violations—no matter how egregious those violations may appear within the local legal framework.").

Further, even assuming Plaintiffs' threadbare assertions allege an equal protection claim, such a claim would fail under the appropriate standard laid out by the Supreme Court in *Anderson v. Celebrezze*, 460 U.S. 780 (1983), and *Burdick v. Takushi*, 504 U.S. 428 (1992). Under this framework, courts weigh the burden on the right to vote against the precise interests put forth by the state. *See Rogers v. Corbett*, 468 F.3d 188, 193-94 (3rd Cir. 2006) (stating that "the *Anderson* test is the proper method for analyzing [voting] equal protection claims due to their relationship to the associational rights found in the First Amendment"). It is a "flexible" sliding scale, where "the rigorousness of [the court's] inquiry depends upon the extent to which [the challenged law] burdens [voting rights]." *Anderson*, 460 U.S. at 789. Here, Plaintiffs have not alleged that they or any voters have any burden on the right to vote at all, and therefore their claim would merit at most minimal scrutiny. *See Rogers*, 468 F.3d at 194. The state's interests in an orderly and efficient election, as well as protecting the due process rights of other voters, *see infra* Section III.A.3, easily justify any purported burden here.

### 2. Plaintiffs will not suffer irreparable harm absent relief.

Next, a preliminary injunction is not appropriate because Plaintiffs have made no showing that they stand to suffer "immediate irreparable harm," in the absence of relief. *Campbell Soup Co. v. ConAgra, Inc.*, 977 F.2d 86, 87 (3d Cir. 1992). Plaintiffs point to no threat of future injury, but instead rely on harm that has already occurred as the sole basis for relief. So even if they are correct that "multiple individuals have already been allowed to cure defective ballots" this type of harm does support the issuance of an injunction. *See Freedom Med. Inc. v. Whitman*, 343 F. Supp. 3d 509, 530 (E.D. Pa. 2018) ("[A] showing of past harm, without more, is insufficient to justify the issuance of a preliminary injunction.").

### 3. The public interest and balance of equities weigh in favor of denying the requested injunction.

Finally, the public interest and balance of the equities weighs against Plaintiffs. One of the remedies Plaintiffs now seek—post hoc rejection of lawfully cast ballots—threatens to disenfranchise voters who cast their ballots lawfully and in reliance of the procedures implemented by the county board, denying them their constitutional right to vote. As a general matter, preventing constitutional harm serves the public interest. *See, e.g., K.A. ex rel. Ayers v. Pocono Mountain Sch. Dist.*, 710 F.3d 99, 114 (3d Cir. 2013); *ACLU v. Ashcroft*, 322 F.3d 240, 251 n. 11 (3d Cir. 2003). "There is more to the right to vote than the right to mark a piece of paper and drop it in a box or the right to pull a lever in a voting booth. The right to vote includes the right to have the ballot counted." *Reynolds v. Sims*, 377 U.S. 533, 555 n.29 (1964) (quotation marks omitted); *see also Duncan v. Poythress*, 657 F.2d 691, 700 (5th Cir. 1981) ("Qualified citizens not only have a constitutionally protected right to vote . . . but also the right to have their votes counted.") (citations omitted).

The equities also bar Plaintiffs' requested relief. Their own allegations establish that the procedures they complain of have been in place since October 21, Compl. ¶ 21; they first raised their concerns about pre-canvas issues on October 29; then they waited until Election Day—when the pre-canvass was well underway—to file this lawsuit. This inexcusable delay strongly counsels against granting the extraordinary relief they seek. *Republican Party of Pa. v. Cortes*, 218 F. Supp. 396, 404 (E.D. Pa. 2016); *see also, e.g.*, *Kay v. Austin*, 621 F.2d 809, 813 (6th Cir. 1980) ("As time passes, the state's interest in proceeding with the election increases in importance as resources are committed and irrevocable decisions are made," and an aggrieved individual becomes less credible by his having slept on his rights). Here, the state has already started counting the ballots and Plaintiffs provide no justification for their decision to wait until now to seek injunctive relief. Thus, the equities also counsel in favor of denying their claim.

## IV.  CONCLUSION

For the reasons stated herein, this Court should deny Plaintiffs' request for a temporary restraining order.

Dated: November 4, 2020

Respectfully submitted,

**PERKINS COIE, LLP**

By: */s/ Edward Rogers*

Edward Rogers
Terence M. Grugan
**Ballard Spahr LLP**
1735 Market Street, 51st Floor
Philadelphia, PA 19103-7599
Telephone: (215) 864-8659
Facsimile: (215)864-8999
RogersE@ballardspahr.com
ClarkR@ballardspahr.com

Marc E. Elias*
Uzoma N. Nkwonta*
John M. Geise*
Stephanie I. Command*
**PERKINS COIE LLP**
700 13th Street, NW, Suite 800
Washington, D.C. 20005-3960
Telephone: (202) 654-6200
Facsimile: (202) 654-6211
MElias@perkinscoie.com
UNkwonta@perkinscoie.com
JGeise@perkinscoie.com
SCommand@perkinscoie.com

*Counsel for Proposed Intervenor Democratic National Committee*

*\*Motions for Admission Pro Hac Vice Pending*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document, memorandum in support, and proposed order were electronically filed on November 4, 2020, via the Court's CM/ECF System, which will send notification of such filing to counsel of record for Plaintiff.

/s/ *Edward Rogers*
Counsel for Proposed Intervenor