# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KATHY BARNETTE AND CLAY D. BREECE, | ) | CIVIL ACTION |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 2-20-cv-05477 |
| | ) | |
| KENNETH E. LAWRENCE JR., VALERIE A. ARKOOSH. MD, MPH, FRANK DEAN, in their individual capacities, | ) | |
| | ) | |
| Defendants. | ) | |

## AMENDED BRIEF IN SUPPORT OF THE PENNSYLVANIA DEMOCRATIC PARTY'S MOTION TO INTERVENE

Pursuant to Rule 24 of the Federal Rules of Civil Procedure, the Pennsylvania Democratic Party ("PA Democratic Party" or "Intervenor"), by and through counsel, hereby moves for leave to intervene in this action, and states as follows:

I. **INTRODUCTION**

Misinterpreting both the facts and law, Plaintiffs, a candidate for Pennsylvania's 4th Congressional District and an elector in the Pennsylvania's 4th Congressional District, seek to throw out valid mail-in ballots of qualified electors of Montgomery County on Election Day because those voters corrected administrative errors made compiling their vote-by-mail packages. Plaintiffs contend, incorrectly, that the Pennsylvania Election Code denies County Boards of Election ("Boards") from allowing voters to timely cure such procedural defects. Additionally, Plaintiffs argue that the Montgomery County Board of Elections ("Montgomery Board") failed to comply with the pre-canvass requirements of Act 12 of 2020 and has unfairly conducted its Election Day canvass. Plaintiffs seek injunctive relief preventing anyone "from contacting any elector whose mail-in ballot or absentee ballot contains perceived and actual defects; and allowing the elector to change their ballot" and the "setting aside, sequestering and declaring spoiled [of] any mail-in or absentee ballots that have been changed by an elector or otherwise not conforming with the Election Code." These extraordinary remedies find no home in the Election Code and this Court should deny Plaintiffs' requested relief.

Merits aside, the PA Democratic Party is entitled to intervention as a matter of right in this action under Fed. R. Civ. P. 24(a). The PA Democratic Party has a vital interest, on behalf of itself, its voters, and its candidates that warrants intervention and participation in this matter.

- *First*, courts across the country, including in Pennsylvania, have recognized the right of political parties to intervene where significant changes to general election procedures are sought.

- *Second*, the PA Democratic Party's cognizable interests are impeded by the relief Plaintiffs' request. The relief Plaintiffs demand here would directly and substantially impair the rights and interests of the PA Democratic Party and disenfranchise voters who timely and properly cured and cast ballots that contained technical errors by 8:00 p.m. on Election Night.

- *Third,* PA Democratic Party's cognizable interests are not adequately represented by the existing Defendants.

- *Fourth*, PA Democratic Party's interests in this action mirror the interests, as applicable, of the candidate-electors who are Plaintiffs in this action.

For these reasons, this Court should grant the PA Democratic Party's Motion to Intervene.

II. **FACTUAL BACKGROUND**

    A. **Relevant Portion of Election Code**

Plaintiffs contend that the pre-canvassing provisions of the Election Code prohibit Boards from contacting voters to fix procedurally deficient mail-in ballots and cast the corrected ballots by 8:00 p.m. on Election Day. 25 P.S. § 101, *et. seq.* Nothing in the Election Code prohibits Boards from allowing voters to timely cure their ballots, and no state or federal court has ever ruled otherwise.[1] Further, the Election Code explicitly permits qualified voters to cast a provisional ballot by 8:00 p.m. on Election Day to cure perceived deficiencies in their mail-in ballot (or, in the event the qualified voter never received his or her mail-in ballot). *Id.* at § 3150.16(b)(2).

---

[1] Plaintiffs misstate the Pennsylvania Supreme Court's ruling that declined to order Boards to provide such an opportunity but did *not* restrict the ability of Boards to do so.

2

**B.     Allegations in Complaint**

On Election Day morning, Plaintiffs filed this Complaint and seek extraordinary relief: to disenfranchise timely cast ballots by qualified electors. Dkt. 1, PRAYER FOR RELIEF. Plaintiffs now baldly assert that the Montgomery Board violated the pre-canvass provisions in the Election Code when it performed sufficiency testing on vote-by-mail ballots by grouping mail-in and absentee ballots received before Election Day to expedite the pre-canvassing process and to ensure voters were not disenfranchised.

According to Plaintiffs, the Montgomery Board informed Plaintiffs' representatives on October 31, 2020 that if a qualified voters' mail-in or absentee ballot contains a defect or lacks a secrecy envelope (i.e., a naked ballot), the qualified voter will be given the opportunity to correct the declaration and/or would be provided a secrecy envelope. Dkt. 1, ¶ 18. Further, the Montgomery Board explained that qualified voters could go to the Montgomery Board's office to fix other ballot deficiencies before the statutory deadline. *Id.* at ¶ 19.

The Montgomery Board attached certain spreadsheets to their email communications to Plaintiffs' representatives that set forth the findings made available to all parties; information that the parties could also download from the public records in the State Department's SURE system. *Id.* at ¶ 21. These spreadsheets contain information related to ballots that have defective declarations and lack a secrecy envelope. *Id.* at ¶ 22. Plaintiffs misstate that the Montgomery Board's preparations constitute "pre-canvassing" which, the Plaintiffs contend, occurred too early and without otherwise complying with certain statutory requirements. *Id.* at ¶ 26. They also argue that the differential conduct between the Berks County Board of Elections ("Berks Board") and the Montgomery Board would require disenfranchisement of Montgomery County voters rather than, as they might have (and certainly more properly could have) argued that the Berks Board should enfranchise voters. *Id.* at ¶¶ 27-28.

Plaintiffs ask this Court to disenfranchise voters and "set aside and declare void any ballots that have been submitted to Montgomery County and subsequently changed." *Id.* at ¶ 32.

**C.     The PA Democratic Party, Its Members, Its Candidates and Its Interests Here**

The PA Democratic Party is the largest political party by registration in Pennsylvania. The PA Democratic Party has more than 4.2 million registered voters. *See* Voting & Election Statistics, PA. DEPT. OF STATE WEBSITE, (available at: https://www.dos.pa.gov/VotingElections/OtherServicesEvents/VotingElectionStatistics/Pages/VotingElectionStatistics.aspx) (last visited November 3, 2020). The PA Democratic Party is a "major political party" as defined in the Pennsylvania Election Code (the "Code"). 25 P.S. §§ 2601. In the 2020 General Election, the PA Democratic Party has a full slate of candidates for all statewide elected positions and virtually all legislative seats on the 2020 General Election ballot, including in Pennsylvania's 4th Congressional District and President and Vice-President. The goal of the PA Democratic Party is to promote its candidates and the interests of its registered voters.

**D.     The 2020 General Election**

The free and fair administration of the 2020 General Election is imperative to the future of the Commonwealth of Pennsylvania and the country. Clear guidance on pre-canvassing procedures and protocols will ensure the franchise of voters and prevent unsubstantiated allegations seeking to undermine the results of the election.

The PA Democratic Party has a significant interest in deterring efforts to undermine the administration and outcome of the 2020 General Election, including efforts to cause valid votes to be discarded or to interfere with efforts of counties to administer an election in a manner that allows all voters to exercise their franchise as easily as is feasible in this era of a pandemic.

4

**III.     ARGUMENT**

    **A.     Standard for Intervention**

Rule 24 of the Federal Rules of Civil Procedure governs intervention by non-parties. The Rule provides, in pertinent part, as follows:

> a.  <u>Intervention of Right</u>.  On a timely motion, the court must permit anyone to intervene who: . . .
>
> 2.  claims an interest relating to the property or transaction that is the subject of the action and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.
>
> b.  <u>Permissive Intervention</u>
>
> 1.  In General.  On timely motion, the court may permit anyone to intervene who: . . ..
>
> (b)  has a claim or defense that shares with the main action a common question of law or fact . . . .
>
> 3.  <u>Delay or Prejudice</u>.  In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights.

Fed. R. Civ. P. 24.

The Third Circuit, applying Rule 24, has held that a party may intervene as of right if it can demonstrate: "(1) a sufficient interest in the litigation; (2) a threat that the interest will be impaired or affected, as a practical matter, by the disposition of the action; and (3) that its interest is not adequately represented by the existing parties to the litigation." *Pennsylvania v. President United States of America*, 888 F.3d 52, 57 (3d Cir. 2018).

    **B.     The PA Democratic Party Meets the Standard for Intervention as of Right**

The PA Democratic Party satisfies all three requirements for intervention as of right in this matter.

5

> 1. *Courts have consistently held that political parties have interests in cases challenging general election procedure*

The PA Democratic Party, like other political organizations, has distinct interests in litigation that challenges general election procedure, namely protecting Democratic candidates in competing in a free and fair election and further protecting registered Democratic voters' rights to an effective vote. *See Orloski v. Davis*, 564 F. Supp. 526 (M.D. Pa. 1983); *Pennsylvania Democratic Party v. Republican Party of Pennsylvania*, No. 16-5664, 2016 WL 6582659 (E.D. Pa. Nov. 7, 2016); *Donald J. Trump for President, Inc., et al v. Boockvar*, No. 20-966, Dkt. 309 (W.D. Pa. Aug. 3, 2020). Both the PA Democratic Party and the Pennsylvania Republican Party have been permitted to intervene in cases addressing the conduct of the general election. *See, e.g., Pierce v. Allegheny County Bd. of Elections*, 324 F.Supp.2d 684 (W.D. Pa. 2003) (addressing Republican challenge to third-party delivery of absentee ballots and noting the intervention of the Pennsylvania Democratic Party); *Stein v. Cortes*, 223 F.Supp.3d 423 (E.D. Pa. 2016) (addressing recount demand for 2016 general election ballots and noting the intervention of the Pennsylvania Republican Party).

This right of political parties to intervene is recognized by federal courts across the country. In *Democratic Party of Georgia, Inc. v. Crittenden*, 18-cv-05181 (N.D. Ga. 2018), the state Democratic Party sued state election officials over the procedure for canvasing and curing provisional ballots. The court held that the Democratic Party of Georgia had organizational standing to bring such a challenge. *Id*. The federal court further permitted the Republican Party of Georgia to intervene in the proceedings and thereafter oppose the relief requested by the Democratic Party in a pro forma slip opinion order. *Id*. at [ECF 40] (N.D. Ga. Nov. 14, 2018). Similarly, in *Democratic Exec. Comm. of Florida v. Detzner*, 347 F. Supp. 3d 1017 (N.D. Fla. 2018), the Democratic Party sued state election officials over rejected provisional ballots. Again,

the federal court expressly found that the state Democratic party had standing to bring such claims on behalf of its voters. *Id*. Further, the federal court again permitted an opposing political party, the National Republican Senatorial Committee, to intervene in the matter in a pro forma slip opinion order. *Id*. at [ECF 20] (N.D. Fla. Nov. 8, 2018).

State parties have a cognizable interest in intervening in lawsuits regarding general election procedure. This case is no exception.

> 2. *The PA Democratic Party has an interest in protecting its right to compete in free and fair elections*

The PA Democratic Party represents and is accountable to the interest of its registered voters in the Commonwealth. It promotes and protects its members and nominees for public office. It works to increase voter turnout to elect Democratic candidates at the federal, state and local levels and monitors the election process to ensure that all eligible voters have their votes protected. The Candidates hope to be elected to the seats for which they are nominees. Each candidate spent significant resources and invested their time to win the Democratic Primary and will do so once again in an effort to compete, and hopefully, prevail in the General Election.

Federal courts in this Commonwealth have held that political associations have standing to protect the interests of their candidates, including challenges to general election balloting procedures. *See Orloski*, 564 F.Supp. at 531. For example, in *Orloski*, the Court granted the Democratic Party's motion to intervene in challenging the Pennsylvania statute (42 P.S.C.A. § 3133) governing the election of Commonwealth Court judges. *Id*. at 529. Apparently to encourage the election of bipartisan bench, that statute provided that, in that particular situation, where there were three vacancies on the court, a political party could only nominate two candidates. The Pennsylvania Democratic Party asserted that the statute unconstitutionally diluted the voting power of voters and argued that its members' voting strength was "worth less in electing their preferred

7

choices than the fewer minority party votes are worth in electing their single candidate." *Id*. The court held that the Pennsylvania Democratic Party had sufficient interest in the matter to raise their claim and held that because it "endorse[d] and support[ed] candidates for each statewide judicial office in the Commonwealth," it had a right to participate in the litigation. *Id*. at 530-531.

Similar to the challenge in *Orloski*, where the election process itself was at issue, the PA Democratic Party has an interest in protecting its candidates in the 2020 General Election. The PA Democratic Party endorses and supports its candidates for each General and Municipal Pennsylvania Election. The relief that the Plaintiffs' demand here would undermine the fairness of the election and harm the Democratic candidates as well as voters. The PA Democratic Party is entitled to protect and defend the interests of its candidates. *See id.; see also Democratic Party of the United States v. Nat'l Conservative Political Action Comm.*, 578 F.Supp. 797, 810 (E.D. Pa. 1983) (holding the Democratic Party had Article III standing to challenge presidential election campaign funding statute because "speech that reduces the likelihood of its nominee's victory injures the Democratic Party in more than an ideological way."), *aff'd in part and rev'd in part on other grounds sub nom* 470 U.S. 480 (1985); *Texas Democratic Party v. Benkiser*, 459 F.3d 582, 587 (5th Cir. 2006) (noting that "a political party's interest in a candidate's success is not merely an ideological interest.  Political victory accedes power to the winning party, enabling it to better direct the machinery of government toward the party's interests.") (citation omitted).

In *Pa. Democratic Party*, this Court expressly found organizational standing for the Pennsylvania Democratic Party. *Pa. Democratic Party*, 2016 WL 6582659, at *3. In a lawsuit alleging voter intimidation in the 2016 presidential election, the court found that the Pennsylvania Democratic Party rightfully could bring the claim to protect "the interests of both Democratic candidates running for office and Democratic voters." *Id*. Early this year, this Court made a similar

ruling. *See Libertarian Party of Pennsylvania, et al., v. Wolf*, No. 20-2299 (E.D. Pa. 2020) (Smith, J.). The PA Democratic Party has an identical interest in protecting its candidates in this election.

> 3. **The PA Democratic Party has an interest in protecting its voters, constituents and members.**

The PA Democratic Party has a cognizable interest to protect its voters, constituents and members in the general election. As noted, in *Pa. Democratic Party*, the Court found standing for the Pennsylvania Democratic Party in its effort to protect its voters. *Pa. Democratic Party*, 2016 WL 6582659 at *3. The court found that the Pennsylvania Democratic Party "works to elect Democrats from the top of the ticket on down in local, county, state, and federal elections." *Id*. In representing their own voters, the party had standing to bring suit and protect its interests. *Id*. The court in *Orloski* also found that, beyond the interests of its candidates, the Pennsylvania Democratic Party had standing to protect its voters. *Orloski*, 564 F.Supp. at 531 (holding "[t]he right of a party...to a place on the ballot is entitled to protection and is intertwined with the rights of voters."). The Pennsylvania Democratic Party in *Orloski* challenged the constitutionality of the statute under voter dilution concerns because it limited the number of major party votes. *Id*. at 529.

Here, Plaintiffs seek relief that is not expressly authorized in the Elections Code. Nothing in the Elections Code prohibits Boards to group mail-in and absentee ballots based on the content of the outer envelope to more expeditiously pre-canvass such ballots. Further, the Election Code also does not authorize Boards to void ballots that have been cured by voters *before* the Election Code's statutory deadline of 8:00 p.m. on Election Day. Were the Court to grant Plaintiffs' relief (which is not authorized by the Election Code), it would disenfranchise voters who have cast valid ballots before the statutory deadline.

The PA Democratic Party seeks to protect the electoral franchises of their voters and ensure free and fair elections in the Commonwealth. Because federal and state courts have explicitly held that political parties have standing to challenge general election procedures on behalf of their party, candidates, and voters, this Court can and should find that PA Democratic Party has an interest in this litigation. *See Orloski*, 564 F. Supp. at 530 (permitting Democratic State Committee and Chair of that committee to intervene to protect interests of, among others, political candidates).

For these reasons, the PA Democratic Party has a legally recognized interest in protecting their voters, members, and themselves.

    4.    *The PA Democratic Party's interests are impaired by the requested relief.*

The relief that the Plaintiffs demand here would directly and substantially impair the rights and interests of the PA Democratic Party. *See President*, 888 F.3d at 59 (An PA Democratic Party "must demonstrate that [its] legal interests may be affected or impaired [ ] as a practical matter by the disposition of the action."). Impairment is a "diminution, however small, in strength, value, quality, or quantity." 6 Moore's Fed. Practice, § 24.03(3)(a). Pennsylvania courts "'may consider any significant legal effect on the applicant's interest,' including a decision's *stare decisis* effect or a proposed remedy's impact on the applicant for intervention." *President*, 888 F.3d at 59. Pennsylvania also follows a "policy preference which, as a matter of judicial economy, favors intervention over subsequent collateral attacks." *Id*.

Again, Plaintiffs' requested relief finds no support in the Election Code; they are simply seeking to invalidate validly cast ballots based under the guise of *Bush v. Gore*, which is inapplicable here. Plaintiffs' requested relief undermines the spirit of Pennsylvania's Free and Fair Elections Clause and the ability of voters to cast their ballots for candidates of the PA Democratic Party. The PA Democratic Party, which has expended large amounts of time, money, and other resources, will be directly harmed if the votes of their supporters are not counted,

especially because the votes meet statutory requirements of validly cast ballots. Accordingly, Plaintiffs' requested relief would directly and substantially impair the PA Democratic Party's cognizable interests.

> 5. *The PA Democratic Party interests are not adequately represented by the existing Defendants.*

The named Defendants are Montgomery County election officials. These defendants are statutorily required to remain impartial in elections. *See e.g.*, 25 Pa. C.S. §§ 301(b); 302 (outlining composition of Boards and duties of Boards).

These election officials cannot adequately represent the PA Democratic Party's cognizable interest. Interests "are not adequately represented if they diverge sufficiently from the interests of the existing party, such that 'the existing party cannot devote proper attention to the applicant's interests.'" *President*, 888 F.3d at 60 (citations omitted). The burden is minimal, and in the case of a governmental entity whose views are colored by public welfare rather than more personal interests of the PA Democratic Party, "the burden is comparatively light." *Id*. at 60-61. The PA Democratic Party's interest diverges from the Defendants' because their purpose is to protect their own party, candidates, and voters, which political parties and candidates have a distinct right to protect. *See Orloski*, 564 F.Supp. at 531; *Pa. Democratic Party*, 2016 WL 6582659 at *3. These interests are directly opposed to the Plaintiffs' interests here.

> 6. *Intervention is timely*

The instant motion is timely under all the circumstances. *See Delaware Valley Citizens' Council for Clean Air v. Pennsylvania*, 674 F.2d 970 (3d Cir. 1982) (presenting three factors for determining timeliness: how far proceedings have progressed; prejudice caused by a delay and the reason for the delay). Plaintiffs filed and served this Complaint on the morning of Election Day

11

and PA Democratic Party filed this Motion the next day. The Motion does not delay the proceedings at all.

### C. Alternatively, Permissive Joinder Is Appropriate to Protect the PA Democratic Party's Interests

In the alternative, this Court should exercise its discretion to permit the PA Democratic Party to intervene permissively under Fed. R. Civ. P. 24(b). Rule 24(b) allows for intervention where "a claim or defense that shares with the main action a common question of law or fact" exists and a timely application is made. Fed. R. Civ. P. 24(b)(1)(b). It is within the trial court's discretion to determine whether intervention would "unduly delay or prejudice the adjudication of the rights of the parties." *Kitzmiller v. Dover Area School Dist.*, 388 F.Supp.2d 484, 486 (M.D. Pa. 2005) (holding that in granting permissive intervention, "courts consider whether the proposed intervenor will add anything to the litigation."). For the same reasons that support intervention as of right, the instant motion meets all the requirements for permissive intervention, and it would not cause any prejudice to the original parties. Specifically, the PA Democratic Party's claims and defenses directly relate to the same Election Code sections and procedures under which Plaintiffs seek relief.

Further, permitting the PA Democratic Party to intervene would aid the Court with its expertise in the pre-canvass election process and in the "adversarial testing" to the parties' dispute. *See League of Women Voters of Virginia v. Virginia State Bd. of Elec.*, No. 20-00024, 2020 WL 2090678, at *5 (W.D. Va. Apr. 30, 2020) (granting permissive intervention to the Republican Party of Virginia where the existing parties had continued to reach consent orders). For these reasons, this Court should permit the PA Democratic Party to intervene in this case.

## IV. CONCLUSION

For the foregoing reasons, the PA Democratic Party respectfully request that this Court enter an order granting the PA Democratic Party's Motion to Intervene, by right, or in the alternative, enter an order granting the PA Democratic Party the permission to intervene.

                                          Respectfully submitted,

Dated: November 4, 2020              */s/ A. Michael Pratt*
                                          A. Michael Pratt
                                          Kevin M. Greenberg
                                          Adam R. Roseman
                                          **GREENBERG TRAURIG, LLP**
                                          1717 Arch Street, Suite 400
                                          Philadelphia, PA  19103
                                          (t) 215.972.5916/7818/7826
                                          (f) 215.988.7801
                                          prattam@gtlaw.com
                                          greenbergk@gtlaw.com
                                          rosemana@gtlaw.com

                                          *Attorneys for PA Democratic Party*