IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KATHY BARNETTE, individually and as a candidate for Pennsylvania's 4th Congressional District and on behalf of all citizen electors of Berks County, Pennsylvania, et al. | : : : : : | Civil Action No.  2:20-cv-05477 |
| Plaintiffs, | : : | |
| v. | : : | |
| KENNETH E. LAWRENCE JR., Chair of the Montgomery County Board of Elections and Vice Chair of the Montgomery County Board of Commissioners, in his official capacity, et al. | : : : : : | |
| Defendants. | : | |

**MEMORANDUM IN SUPPORT OF THE
MOTION FOR A TEMPORARY RESTRAINING ORDER**

Oral argument on the motion for temporary restraining order was heard on Wednesday, November 4, 2020 at 9 a.m.  At oral argument, the Court invited a supplemental memorandum on the matters discussed.

**BACKGROUND**

**I.      Pennsylvania Election Code requires pre-canvassing and canvassing of all mail-in and absentee ballots.**

Pennsylvania's Election Code, first enacted in 1937, provides a role for counties, that "[t]here shall be a county board of elections in and for each county of this Commonwealth, which shall have jurisdiction over the conduct of primaries and elections in such county, *in accordance with the provisions of [the Election Code]*."  25 P.S. § 2641(a) (emphasis added).  Those powers include selecting polling places, appointing poll watchers, maintaining election equipment, and making other regulations, consistent with law, "necessary for the guidance of voting machine

custodians, elections officers and electors." 25 P.S. § 2642.  One notable limitation on counties'

administrative powers, in addition to compliance with the Election Code, is the Pennsylvania

Constitution provides that "[a]ll laws regulating the holding of elections by the citizens, or for the

registration of electors, shall be uniform throughout the State . . . ."  Pa. Const. art. VII, § 6.

On March 27, 2020, Pennsylvania passed legislation, which made various changes to the

Pennsylvania Election Code, including by amending when mail-in and absentee ballots could be

reviewed and counted and by defining "pre-canvass" procedures for mail-in and absentee ballots.

The legislation defined "pre-canvass" procedures as:

> the inspection and opening of all envelopes containing official absentee ballots or
> mail-in ballots, the removal of such ballots from the envelopes and the counting,
> computing and tallying of the votes reflected on the ballots. The term does not
> include the recording or publishing of the votes reflected on the ballots.

25 P.S. 2602(q.1).

Further, the legislation identified when and how mail-in and absentee ballots could be pre-

canvassed:

> The county board of elections shall meet no earlier than seven o'clock A.M. on
> election day to pre-canvass all ballots received prior to the meeting. A county board
> of elections shall provide at least forty-eight hours' notice of a pre-canvass meeting
> by publicly posting a notice of a pre-canvass meeting on its publicly accessible
> Internet website. One authorized representative of each candidate in an election and
> one representative from each political party shall be permitted to remain in the room
> in which the absentee ballots and mail-in ballots are pre-canvassed. No person
> observing, attending or participating in a pre-canvass meeting may disclose the
> results of any portion of any pre-canvass meeting prior to the close of the polls.

25 P.S. 3146.8(g)(1)(ii)(1.1).

Further, Paragraph (a) of Section 3146.8 - Canvassing of official absentee and mail-in

ballots of the Election Code, *25 P.S. §3146.8*, states in relevant part "The county boards of election,

upon receipt of official absentee ballots in sealed official absentee ballot envelopes as provided

under this article and mail-in ballots as in sealed official mail-in ballot envelopes … ***shall safely***

*keep the ballots in sealed or locked containers until they are to be canvassed by the county board*

*of elections*. An absentee ballot, … shall be canvassed in accordance with subsection (g). A mail-

in ballot shall be canvassed in accordance with subsection (g)."

> 25 P.S. 3146.8(g)(1)(ii)(1.1). [Emphasis added]

The Supreme Court of Pennsylvania noted that the Elections Code does not provide

elections officials with procedures for contacting electors and allowing electors to cure defects in

mail-in and absentee ballots:

> As noted herein, although the Election Code provides the procedures for casting
> and counting a vote by mail, it does not provide for the "notice and opportunity to
> cure" procedure sought by Petitioner. To the extent that a voter is at risk for having
> his or her ballot rejected due to minor errors made in contravention of those
> requirements, we agree that the decision to provide a "notice and opportunity to
> cure" procedure to alleviate that risk is one best suited for the Legislature.

*Pennsylvania Democratic Party v. Boockvar*, No. 133 MM 2020, 2020 WL 5554644, at *20 (Pa.

Sept. 17, 2020); *see also In re: November 3, 2020 General Election*, 2020 WL 6252803, at *7 (Pa.

Oct. 23, 2020) ("[U]nlike in-person voters, mail-in or absentee voters are not provided an

opportunity to cure perceived defects in a timely manner.").

The Western District of Pennsylvania similarly noted that mail-in and absentee ballot

review procedures do not include for such an opportunity to cure deficiencies. *Donald J. Trump*

*for President, Inc. v. Boockvar*, No. 2:20-CV-966, 2020 WL 5997680, at *57 (W.D. Pa. Oct. 10,

2020).

## II.    Montgomery County implements procedures that deviate from Pennsylvania Election Code and from Berks County, another county in the 4th Congressional District.

As early as October 21, 2020, election officials in Montgomery County regularly pre-

canvassed mail-in and absentee ballots.  Declaration of Jacob G. Daniels (Daniels Decl.) ¶¶ 6-7;

October 31, 2020 email from Frank Dean to Lee Soltysiak and Josh Stein (Ex. D); Excel

spreadsheet attached to Email from Frank Dean to Lee Soltysiak and Josh Stein, 10/31/20 (Ex. E). On November 1, 2020, the Mail-In Election Director of Montgomery County, Frank Dean, acknowledged that county officials regularly inspected and reviewed mail-in ballots received daily and noted the errors, such as a missing inner envelope, referred to as the "secrecy" envelope, and incomplete voter declarations. Daniels Decl. ¶ 6.

In an October 31, 2020 e-mail, Dean sent the "latest list of ballots with defects" to Lee Soltysiak and Josh Stein and wrote: "If the defect is an Incomplete Declaration or Missing Secrecy Envelope, the voter need only come to 1430 DeKalb Street, Norristown, PA 19401. They will be given the opportunity to correct their declaration or we will provide them with a secrecy envelope, which they can insert and reseal inside the Ballot Return Envelope." Ex. D.

Dean further wrote: "For the remainder of defects, the voter needs to go to Voter Services, One Montgomery Plaza, 425 Swede Street, Suite 602, Norristown, PA 19404 and request a Cancel/Replace." Ex. D.

The Excel spreadsheet attached to Dean's October 31, 2020 e-mail notes that when mail-in or absentee ballots were found to have such defects, election officials contacted some but not all of these electors to offer them an opportunity to change their ballot. Daniels Decl. ¶ 7; Ex. E (beginning at p. 62, column Q).

Montgomery County failed to provide 48 hours' notice prior to pre-canvassing mail-in and absentee ballots, and failed to include or invite an authorized representative from each candidate and political party in the room during such pre-canvassing.

Upon information and belief, Berks County has not engaged in pre-canvasing and did not do so until 7:00 a.m. on Election Day. Berks County has provided public notice and stated: "Due notice is hereby given that the pre-canvass of mail-in and absentee ballots will commence on

November 3, 2020 at 7:00AM, Doubletree by Hilton Hotel Reading, 701 Penn Street, Reading, PA 19601." Berks County Public Notice of Pre-Canvassing, https://www.co.berks.pa.us/Dept/Elections/Pages/default.aspx.  Berks County in Pennsylvania is following the Election Code by (a) refraining from pre-canvasing until 7:00 a.m. on Election Day and (b) not providing electors an opportunity to change their ballots after submitting the ballots to Berks County.

During Election Day, individuals from the Republican and Democrat parties were able to observe some portion of pre-canvassing.  Declaration of Shawn M. Packer (Packer Decl.) ¶ 2; Declaration of Julia Vahey (Vahey Decl.) ¶ 6.  Representatives from the Republican and Democrat parties were provided with lists of defective mail-in and absentee ballots on Election Day and the following day.  Vahey Decl. ¶ 2; 8-10.  The list received by the Republican party representative on Election Day did not contain sufficient information for some voters to allow the representative to contact those voters to notify them of any defects in their mail-in or absentee ballot.  Vahey Decl. ¶¶ 2-9. The list received by the Republican party representative the day after Election Day, however, contained sufficient information for her to contact those voters to notify them of any defects in their mail-in or absentee ballot, but to the best of Plaintiffs' knowledge, Montgomery County is not allowing voters to change their ballots after Election Day.  *Id.*

## QUESTION PRESENTED

Whether treating equivalent votes in different counties, Montgomery County and Berks County, and amongst similarly situated voters in Montgomery County violates Pennsylvania's Election Code, Dillon's Rule, and the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution.

**STANDARD**

"A temporary restraining order is a 'stay put,' equitable remedy that has its essential purpose the preservation of the status quo while the merits of the cause are explored through litigation." *J.O. v. Orange Twp. Bd. of Educ.,* 287 F.3d 267, 273 (3d Cir.2002) (citations omitted). The standard for granting a temporary restraining order under Federal Rule of Civil Procedure 65 is the same as that for issuing a preliminary injunction. *Bieros v. Nicola,* 857 F.Supp. 445, 446 (E.D. Pa. 1994). A plaintiff must demonstrate: (1) a likelihood of success on the merits; (2) the probability of irreparable harm if the relief is not granted; (3) that granting injunctive relief will not result in even greater harm to the other party; and (4) that granting relief will be in the public interest. *Id.* (citing *Frank's GMC Truck Ctr., Inc. v. Gen. Motors Corp.,* 847 F.2d 100, 102 (3d Cir.1988)); *see also Allegheny Energy, Inc. v. DQE, Inc.,* 171 F.3d 153, 158 (3d Cir.1999) (setting forth the four elements for demonstrating need for preliminary injunction).

"[The] first step in analyzing equal protection claim is to determine the appropriate level of scrutiny." *Belitskus v. Pizzingrilli*, 343 F.3d 632, 643 (3d Cir. 2003) (citing *Reform Party of Allegheny County v. Allegheny County Dept. of Elections*, 174 F.3d 305, 314 (3d Cir. 1999). "Making this determination requires an analysis of the effect on [Plaintiffs'] rights." *Id.*

"[A]s a practical matter, there must be substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic process." *Belitskus v. Pizzingrilli*, 343 F.3d 632, 641 (3d Cir. 2003) (quotation omitted). "Nevertheless, a state's power to regulate elections must be exercised in a manner consistent with the Equal Protection Clause of the Fourteenth Amendment." (quotation omitted). *Id.* at 641-642.

"[T]he Supreme Court has developed the following balancing test for use in determining the appropriate level of scrutiny:

> [A reviewing court] must first consider the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate. It then must identify and evaluate the precise interests put forward by the State as justifications for the burden imposed by its rule. In passing judgment, the Court must not only determine the legitimacy and strength of each of those interests; it must also consider the extent to which those interests make it necessary to burden the plaintiff's rights. Only after weighing all these factors is the reviewing court in a position to decide whether the challenged provision is unconstitutional.

*Belitskus* at 643 (3d Cir. 2003) (citing *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983)). "Pursuant to this test, the rigorousness of [the] inquiry into the propriety of a state election law depends upon the extent to which a challenged regulation burdens…Fourteenth Amendment rights." *Id.* (quotation omitted). "[W]hen those rights are subjected to severe restrictions, the regulation must be narrowly drawn to advance a state interest of compelling importance." *Id.* (quotation omitted). The "first step in applying *Anderson* requires a consideration of the burdens imposed on constitutional rights." *Id.*

"The right to vote freely for the candidate of one's choice is of the essence of a democratic society, and any restrictions on that right strike at the heart of representative government." *Reynolds v. Sims*, 377 U.S. 533, 554 (1964). "Obviously included with the right to choose, secured by the Constitution, is the right of qualified voters within a state to cast their ballots and have them counted at Congressional elections." *U.S. v. Classic*, 313 U.S. 299, 315 (1941). When these rights are threatened by actions of the state, the Supreme Court of the United States has typically relied upon strict scrutiny. *See e.g. Reynolds v. Sims*, 377 U.S. 533 (1964); *Harper v. Virginia State Bd. of Elections*, 383 U.S. 663 (1966); *Kramer v. Union Free Sch. Dist. No. 15*, 395 U.S. 621 (1969).

## ARGUMENT

**I.     Plaintiffs have standing under Article III of the U.S. Constitution.**

In order to demonstrate the standing necessary to invoke a federal court's jurisdiction, a plaintiff must demonstrate three elements: (1) that the plaintiff has suffered an injury in fact that is "concrete and particularized" and "actual or imminent"; (2) that the injury is fairly traceable to the challenged conduct of the defendant; and (3) that a favorable decision is likely to redress the injury. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).

For the purposes of determining whether Plaintiffs have standing, it is not "necessary to decide whether [Plaintiffs'] allegations of impairment of their votes" by Defendants' actions "will, ultimately, entitle them to any relief." *Baker v. Carr*, 369 U.S. 186, 208 (1962). Rather, whether a harm has occurred is best left to the analysis of the merits of Plaintiffs' claims, (see discussion infra II through V). Instead, the appropriate inquiry is, "[i]f such impairment does produce a legally cognizable injury," whether Plaintiffs "are among those who have sustained it." *Baker*, 369 U.S. at 208.

Plaintiffs are injured here because their ballots were cast subject to the rules set forth under the Pennsylvania statutes, whereas the ballots subject to Montgomery County's illegal early pre-canvas procedures were not subject to Pennsylvania statutes. They were therefore harmed by the arbitrary and disparate treatment afforded to their votes. *Cf. Bush v. Gore* ("It must be remembered that 'the right of suffrage can be denied by a debasement or dilution of the weight of a citizen's vote just as effectively as by wholly prohibiting the free exercise of the franchise.'"), *quoting Reynolds v. Sims*, 377 U. S. 533, 555 (1964). As Defendants acknowledged that they intend to continue allowing voters who submitted mail-in or absentee ballots to change their ballot, Plaintiffs' injury is ongoing as Defendants continue to review and make decisions regarding ballots and also may be capable of repetition.

Plaintiff Barnette also is injured here in her capacity as a candidate, to the extent that the arbitrary treatment of ballots by Montgomery County validates ballots cast against her that did not comply with the Pennsylvania statutes and debases the value of votes cast in her favor.  In addition to her capacity as a candidate, Plaintiff Barnette on behalf of all citizen electors of Montgomery County was harmed as a results of Montgomery County's arbitrary and disparate treatment of votes within Montgomery County.

Furthermore, the injury is fairly traceable to Defendants' actions; indeed, the Equal Protection Clause violation is directly caused by Defendants' choice to ignore the statutory law governing the treatment of ballots. And a favorable decision ordering Defendants to cease would directly address and prevent the ongoing violation of rights.

In addition, various courts have held that a candidate for public office may assert the rights of those who wish to vote for him.  *Mancuso v. Taft*, 476 F.2d 187, 190 (1st Cir. 1973); *Torres-Torres v. Puerto Rico*, 353 F.3d 79 (1st Cir. 2003).  In doing so courts have recognized "a candidate for public office … is so closely related to and dependent upon those who wish to voter for him and his litigation will so vitally affect their rights that the courts … permit the candidate to raise constitutional rights of voters." Mancuso 476 F.2d at 190.  The Third Circuit has adopted the standard set forth in *Mancuso v. Taft*, noting that a candidate's ability to raise a voters' constitutional rights is one of several instances in which third-party standing is commonly recognized.  *Pennsylvania Psychiatric Soc. V. Green Spring Health Servs., Inc., 280 F.3d 278, 288, nt.10, (3rd Cir. 2002); citing Mancuso v. Taft*, 476 F.2d 187, 190 (1st Cir. 1973).

The Supreme Court of the United States has recognized the right of candidates to assert the constitutional rights of their voters in Bullock v. Carter, 405 U.S. 134 (1972).  In *Bullock*, the Court stated that, "the rights of voters and the rights of candidates do not lend themselves to neat

separation; laws that affect candidates always have at least some theoretical, correlative effect on voters." *Bullock, 405 U.S. at 143.* Pennsylvania's Election Code recognizes a candidate's right to represent the interests of the electorate when it states that candidates are "entitled to appoint watchers … or attorneys to represent such party or political body or ***body of citizens*** at any public session or sessions of the county board of elections, and at any computation and canvassing of returns of any primary or election … under the provisions of this act." *25 P.S. §2650(a).* [Emphasis added]

In the present case, Defendants have permitted a limited number of electors to alter their absentee or mail-in ballots to cure defects in the ballots, but not all electors have been given this opportunity. A vast majority of electors who submitted defective absentee or mail-in ballots were not able to "correct" the defects in their ballots. The rights of these electors have been violated by Defendants. If some electors are given the right to "correct" the ballots, all electors must be given an equal right. Defendants have acknowledged that not all electors were provided this right and that the electors who do not "correct" their ballots will have their ballots rejected and not counted. These electors are being disenfranchised by Defendants while other similarly situated electors will have their votes counted as a direct resolve of Defendants conduct. This is a clear injury in fact that is directly traceable to Defendants' conduct as alleged in Plaintiffs' Complaint.

Further, Plaintiff Barnette's loss of an opportunity to win a Congressional seat is "an invasion of a legally protected interest that is concrete and particularized, not conjectural or hypothetical." Indeed, Plaintiff Barnette loss of the opportunity to win a Congressional seat is an injury that exists and affects her in a personal and individualized way. This is not a generalized grievance affecting the general public. The general public is not running for Congress; rather, Plaintiff Barnette is running for Congress.

## II. Allowing voters to change their mail-in or absentee ballot fails to give meaning to each word of Pennsylvania's Election Code.

Allowing a voter to cure a defect in a mail-in or absentee ballot after the ballot is submitted treats key provisions of the Pennsylvania Election Code as surplusage. "'[T]he rules of statutory construction require that 'whenever possible each word in a statutory provision is to be given meaning and not to be treated as surplusage.'" *Jones v. Unitrin Auto & Home Ins. Co.*, 40 A.3d 125, 127 (Pa. 2012) (quoting *Winslow-Quattlebaum v. Md. Ins. Group*, 752 A.2d 878, 881 (2000) (quoting 1 P.S. § 1921(a)). Indeed, 1 Pa.C.S.A. § 1921(a) mandates: "Every statute shall be construed, if possible, to give effect to all of its provisions."

Allowing voters to cure a defective declaration requires counties to examine a declaration prior to 7:00 a.m. on Election Day and, thus, treats the requirement to begin pre-canvassing no earlier than 7:00 a.m. on Election Day as surplusage. 25 P.S. § 3146.8(g)(1.1); *see* Ex. D. Pre-canvassing means "the inspection and opening of all envelopes containing official ballots or mail-in ballots, the removal of such ballots from the envelopes, and the counting, computing and tallying of the votes reflected on the ballots." 25 P.S. § 102(q.1). During pre-canvassing, the Pennsylvania Election Code mandates that county boards of election "shall examine the declaration on the envelope of each ballot" to be "satisfied that the declaration is sufficient." 25 P.S. § 3146.8(g)(3). If counties are permitted to examine declarations to give voters with defective declarations an opportunity to cure any defect prior to 7:00 a.m. on Election Day, then part of the definition of pre-canvassing and part of the specified duties during pre-canvassing become surplusage.

Pre-canvassing mail-in and absentee ballots prior to 7:00 a.m. on Election Day also violates and renders superfluous the county boards of election's duty to "*upon receipt* of official absentee ballots in sealed official absentee ballot envelopes . . . and mail-in ballots in sealed official mail-

in ballot envelopes . . . safely keep the ballots in sealed or locked containers until they are to be canvassed by the county board of elections." 25 P.S. §3146.8(a) (emphasis added).

Additionally, the Pennsylvania Election Code states: "No person observing, attending or participating in a pre-canvass meeting may disclose the results of any portion of a pre-canvass meeting prior to the close of the polls." 25 P.S. § 3146.8(g)(1.1).  By sending an Excel spreadsheet of voters whose declarations are defective to others such as representatives of both parties, Montgomery County officials essentially disclosed the results of a portion of an illegal pre-canvass meeting prior to the close of the polls.  Allowing Montgomery County officials to disclose information about voters' defective declarations to give them an opportunity to cure any defect renders superfluous the prohibition on such disclosures during the specified time period.

Additionally, allowing voters who have submitted their mail-in or absentee ballots without a secrecy envelope to later add a secrecy envelope renders superfluous the statutory requirements regarding mail-in or absentee ballots.  The Pennsylvania Election Code states: "If any of the envelopes on which are printed, stamped or endorsed the words 'Official Election Ballot' contain any text, mark or symbol which reveals the identity of the elector, the elector's political affiliation or the elector's candidate preference, the envelopes and the ballots contained therein shall be set aside and declared void."  It is nonsensical to interpret the Pennsylvania Election Code to allow voters to cure a mail-in or absentee ballot that is entirely missing a secrecy envelope but to set aside and declare void a mail-in or absentee ballot with a secrecy envelope that has certain markings.  Allowing voters to cure defects in mail-in or absentee ballots missing a secrecy envelope renders superfluous the statutory requirement to set aside and declare void such mail-in or absentee ballots.

Finally, Defendants are required to "safely keep the ballots in sealed or locked containers until they are to be canvassed by the county board of elections. An absentee ballot, … shall be canvassed in accordance with subsection (g). A mail-in ballot shall be canvassed in accordance with subsection (g)." 25 P.S. 3146.8(g)(1)(ii)(1.1).   Without question, Defendants' cannot permit voters to access and alter defective mail-in or absentee ballots while at the same time "safely keep the ballots in sealed or locked containers until they are to be canvassed by the county board of elections."  Such an interpretation and application gives no substantive meaning to the safe keeping requirement of the Election Code.

### III.   Under the Dillon Rule, Montgomery County has no authority to deviate from the standards set forth in the Pennsylvania Constitution and Pennsylvania Election's Code.

Counties in the Commonwealth of Pennsylvania, including Montgomery County, have only the power to act as granted by the Commonwealth, under the Dillon Rule.  *Warner Cable Commc'ns Inc. v. Borough of Schuylkill Haven*, 784 F. Supp. 203, 211 (E.D. Pa. 1992) ("It is well established that Pennsylvania has adopted the *Dillon* rule, which states that a municipal corporation does not possess and cannot exercise any other than the following powers: (1) those granted in express words; (2) those necessarily or fairly implied in or incident to the powers expressly granted; (3) those essential to the declared objects and purposes of the corporation, not simply convenient, but indispensable." (internal citations and quotations omitted)).  The Dillon Rule is particularly robust – that is, the power at issue clearly rests with the Commonwealth and not with municipal subdivisions initially – because the U.S. Constitution grants Pennsylvania's Legislature the sole authority to regulate the time, place, and manner of elections within the Commonwealth of Pennsylvania.  Under the Elections Clause of the U.S. Constitution, political

subdivisions of Pennsylvania such as counties have no power to regulate federal elections, as the power rests exclusively with the state legislatures and Congress:

> The Times, Places and Manner of holding Elections for Senators and Representatives, shall be prescribed in each State by the Legislature thereof; but the Congress may at any time by Law make or alter such Regulations, except as to the Places of chusing Senators. (sic)

U.S. Const., art. I, § 4, cl. 1.

The Supreme Court has stated that the Elections Clause has two functions: "Upon the States it imposes the duty ('*shall* be prescribed') to prescribe the time, place, and manner of electing Representatives and Senators; upon Congress it confers the power to alter those regulations or supplant them altogether." *Arizona v. Inter Tribal Council of Arizona, Inc*., 570 U.S. 1, 8-9 (2013). Such power to regulate federal elections, when specifically allocated to the Commonwealth by Congress, cannot be amended at will by individual election officials in wayward counties. Officials of Montgomery County have no wiggle room to shape federal election law as they desire; the County has only the ability to take the action afforded to it by the Commonwealth.

Despite the normal application of the Dillon Rule, the Commonwealth, through Article IX of the Pennsylvania Constitution of 1968, has granted certain powers to those counties and municipalities that have enacted Home Rule charters. Importantly, those powers must be exercised in compliance with the statutes passed by the General Assembly. PA. Const. art. IX, § 2; *see also* 53 Pa.C.S.A. § 2961 ("A municipality which has adopted a home rule charter may exercise any powers and perform any function not denied by the Constitution of Pennsylvania, by statute or by its home rule charter."). Moreover, Montgomery County is not a Home Rule county and even if Montgomery County or municipalities within Montgomery County were to assert rights under the guise of the Home Rule, Pennsylvania statutes limit municipal powers to prevent Home Rule

charters from affecting a municipality's authority regarding the conduct of elections.  53 Pa.C.S.A. § 2962(a)(5).

Montgomery County can point to no authority enabling it to bypass, augment, or amend Pennsylvania Election Code because none exists.  First, the Pennsylvania Constitution specifically rejects that Pennsylvanians' election rights should vary by home county.  Article 7, Section 6, of Pennsylvania's Constitution expressly provides "All laws regulating the holding of elections by the citizens, or for the registration of electors, shall be uniform throughout the State . . . ." PA Const. art. VII, § 6.  This vital principle not only helps ensure Pennsylvania's compliance with the Elections Clause and the Equal Protection Clause, but also ensures that each vote in the Commonwealth is treated uniformly, an outcome that the Commonwealth has a high interest in protecting.

Indeed, the Supreme Court of Pennsylvania recently considered whether county board of elections are required to contact qualified electors whose mail-in or absentee ballots contain defects to provide them with an opportunity to cure those defects.  *Pa. Democratic Party v. Boockvar*, 2020 WL 5554644, *19 (Pa. September 17, 2020).  The Supreme Court  ruled:

> While the Pennsylvania Constitution mandates that elections be "free and equal," it leaves the task of effectuating that mandate to the Legislature.  Winston, 81 A. at 522.  As noted herein, although the Election Code provides the procedures for casting and counting a vote by mail, it does not provide for the "notice and opportunity to cure" procedure sought by Petitioner.  To the extent that a voter is at risk for having his or her ballot rejected due to minor errors made in contravention of those requirements, we agree that the decision to provide a "notice and opportunity to cure" procedure to alleviate that risk is one best suited for the Legislature.  We express this agreement particularly in light of the open policy questions attendant to that decision, including what the precise contours of the procedure would be, how the concomitant burdens would be addressed, and how the procedure would impact the confidentiality and counting of ballots, all of which are best left to the legislative branch of Pennsylvania's government. . . .

*Id*. at \*20.  Kathy Boockvar as Secretary of the Commonwealth of Pennsylvania agreed with the Supreme Court's position and argued that "there is no statutory or constitutional basis for requiring the Boards to contact voters when faced with a defective ballot and afford them an opportunity to do so.  *Id*. at \*19.  The Secretary further acknowledged that "while it may be good policy to implement a procedure that entails notice of defective ballots and an opportunity to cure them, logistical policy decisions like the ones implicated herein are more properly addressed by the Legislature, not the courts."  *Id*. at \*20.  The legislature has not provided a process for implementing a "notice and opportunity to cure" procedure and has not expressly authorized the counties to create one.

Second, the Pennsylvania Election Code specifically provides that no pre-canvassing can occur early: "The county board of elections shall meet no earlier than seven o'clock A.M. on election day to pre-canvass all ballots received prior to the meeting." 25 P.S. § 3146.8(g)(1)(ii)(1.1).  And the Pennsylvania Election Code section governing the canvassing of absentee and mail-in ballots does not provide *any* authority for an election official to request that an elector cure defects in a mail-in or absentee ballot already cast.  *See Donald J. Trump for President, Inc. v. Boockvar*, No. 2:20-CV-966, 2020 WL 5997680 (W.D. Pa. Oct. 10, 2020) (comparing in-person voting which afford an opportunity to cure with mail-in or absentee voting which does not); *see also* 25 P.S. § 3050(a.3)(2).

So even if Defendants could credibly argue that counties should have some discretion in the location or aesthetic of their collection sites, or the elaboration or lack thereof of voting instruction and advertisement, these types of decisions are operational choices that do not fall under the uniform election law requirement in the Pennsylvania Constitution and are not addressed by the specific admonitions in the Pennsylvania Election Code. Those types of county-by-county

operational differences, to the extent they exist, are simply irrelevant in determining whether Montgomery County has the authority to bypass the Pennsylvania Constitution and Election Code.

Montgomery County has only limited authority allocated to it by the Commonwealth of Pennsylvania.    That authority requires that election laws be uniform throughout the Commonwealth, prevents pre-canvassing before 7:00 a.m. on Election Day, and disallows county boards of election from implementing a "notice and opportunity to cure" procedure for mail-in or absentee ballots where none is provided in the Pennsylvania Election Code.    Accordingly, this Court should grant the temporary restraining order to require Montgomery County to immediately segregate and set aside all mail-in or absentee ballots with any perceived or actual defect.

**IV.** **The Pennsylvania Supreme Court has ruled that county boards are not required to implement a "notice and opportunity to cure" procedure for mail-in and absentee ballots.  Permitting but not requiring county boards to implement such a procedure raises constitutional concerns under the Equal Protection Clause of the Fourteenth Amendment.**

The Supreme Court of Pennsylvania recently held that "Boards are not required to implement a 'notice and opportunity to cure' procedure for mail-in and absentee ballots that voters have filled out incompletely and incorrectly." *Id*. at *20.  The Secretary of the Commonwealth expressly agreed with the Supreme Court's position.  *Id*. at *19-20.  Additionally, the Supreme Court most recently reiterated: "[U]nlike in-person voters, mail-in or absentee voters are not provided an opportunity to cure perceived defects in a timely manner."  *In re: November 3, 2020 General Election*, 2020 WL 6252803, at *7 (Pa. Oct. 23, 2020).  This statement appears in the context of the lower court's ruling that Pennsylvania's Election Code requires that a declaration include a signature but does not require county boards of election to verify that signature on a mail-in or absentee ballot.  *Id*.  The lower court reached this determination in part because Pennsylvania

Election Code "contains no requirement that voters whose ballots are deemed inadequately verified be apprised of this fact." *Id*.

Because county boards of election are not *required* to implement a "notice and opportunity to cure" procedure, allowing county boards of election discretion to proceed differently with respect to such a procedure inevitably results in similarly situated votes being treated differently based on the county where the voter resides. If county boards of election are not required to implement a "notice and opportunity to cure" procedure, then not all counties will provide such a procedure. If a voter submits a defective mail-in or absentee ballot but lives in a county like Berks County that does not provide a "notice and opportunity to cure" procedure, this voter will not have an opportunity to re-vote. If a voter submits a defective mail-in or absentee ballot but lives in a county like Montgomery County that has such a procedure, this voter will be able to change and re-submit the mail-in or absentee ballot and essentially votes twice. Even among counties that choose to provide a "notice and opportunity to cure" procedure with respect to mail-in or absentee ballots, each county may have a different procedure because the Pennsylvania Election Code does not provide a uniform procedure. Accordingly, some counties may allow certain defects such as a defective declaration to be cured, while other counties may not allow defective declarations to be cured but may allow voters to add a secrecy envelope.

The disparate treatment of votes among counties raises a constitutional concern under the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution, and this Court should interpret Pennsylvania's Election Code in a manner to avoid such a constitutional concern. "[W]here an otherwise acceptable construction of a statute would raise serious constitutional problems, the Court will construe the statute to avoid such problems unless such construction is plainly contrary to the intent of Congress," or here the Pennsylvania General Assembly. *Edward*

*J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Const. Trades Council*, 485 U.S. 568, 575 (1988). Ruling that counties are permitted but not required to provide a "notice and opportunity to cure" procedure raises a constitutional concern under the Equal Protection Clause that may be avoided. The Pennsylvania Election Code does not provide voters who use mail-in or absentee ballots with notice and an opportunity to cure their ballots, and allowing counties to do so renders superfluous key provisions of Pennsylvania's Election Code, violates Dillon's Rule, and raises serious constitutional concerns under the Equal Protection Clause.

**V.      Equivalent votes in Montgomery County and Berks County are being treated differently in violation of the Equal Protection Clause.**

Montgomery County officials acknowledged that they provide some voters with an opportunity to re-vote by changing their mail-in or absentee ballots.  Exs. D & E (ECF No. 12). Dean's October 31, 2020 e-mail and accompanying spreadsheet demonstrate that Montgomery County provided notice and an opportunity to some voters to cure certain defects in their mail-in or absentee ballots.  To the best of Plaintiffs' knowledge, Berks County has complied with the Pennsylvania Election Code and has not provided any voters with an opportunity to re-vote, even though the mail-in or absentee ballots of these voters may have the same defects as the mail-in or absentee ballots of voters in Montgomery County.  In *Bush v. Gore*, the Supreme Court of the United States determined that "having once granted the right to vote on equal terms, the State may not, by later arbitrary and disparate treatment, value one person's vote over that of another."  531 U.S. 98, 104-05 (2000).  Here, the Commonwealth of Pennsylvania has granted the right to vote on equal terms, and counties such as Montgomery County may not, by later arbitrary and disparate treatment, value one person's vote over that of another.

The Secretary of the Commonwealth opposed requiring counties to provide a "notice and cure" procedure for defects in mail-in or absentee ballots because "as long as a voter follows the

requisite voting procedures, he or she 'will have an equally effective power to select the representative of his or her choice.'" *Pa. Democratic Party v. Boockvar*, 2020 WL 5554644, *20. The Secretary of the Commonwealth asserted that there was "no explanation as to how the Boards would notify voters or how the voters would correct the errors" and conceded that "logistical policy decisions like the ones implicated herein are more properly addressed by the Legislature." *Id.*  In doing so, she implicitly recognized that the "[t]he right to vote is protected in more than the initial allocation of the franchise.  Equal protection applies as well as to the manner of its exercise." *Bush*, 531 U.S. at 104.  Just as there was no uniform mechanism in *Bush* to discern voter intent, the Secretary recognized that there was no uniform "notice and cure" procedure for all counties. *Bush*, 531 U.S. at 106-08; *Pa. Democratic Party v. Boockvar*, 2020 WL 5554644, *20.

Montgomery County cannot be allowed to permit some voters the right to vote twice, while each voter in Berks County receives only one opportunity to vote.  Under Pennsylvania's Election Code, each person receives one vote, and Montgomery County's procedures result in the arbitrary and disparate treatment of votes.

### VI.   Equivalent votes amongst similarly situated voters within Montgomery County are being treated differently in violation of the Equal Protection Clause.

Montgomery County's procedures allowing some voters to change their ballot also have resulted in the disparate and arbitrary treatment of equivalent votes among similarly situated voters within Montgomery County.  Compl. ¶ 3 (ECF No. 1).  Montgomery County officials acknowledge identifying defects in mail-in and absentee ballots as they receive these ballots, but Montgomery County officials did not give voters with the same or similar defects in their mail-in or absentee ballots the same opportunity to change their ballot, nor could they due to time constraints.

First, the Excel spreadsheet that Montgomery County maintains records of the voters whom Montgomery County contacted to notify them of a defect in their mail-in or absentee ballot and

also to give them an opportunity to change their ballot.  Ex. E.  As of October 31, 2020, Montgomery County had not contacted all of the voters who had defects in their mail-in or absentee ballot.  *Id*.  The Excel spreadsheet notes that Montgomery County officials contacted some voters who had a defective declaration but not others.  *Id*. (Ex. E, beginning at p. 62, column Q).  Similarly, this same spreadsheet notes that Montgomery County officials contacted some voters whose mail-in or absentee ballots were missing a secrecy envelope but not others.  *Id*.

Second, Montgomery County could not notify all voters of the similar or same defect in their mail-in or absentee ballots such as to give them the same opportunity to change their ballots simply because these mail-in or absentee ballots are received at different times.  For example, if a mail-in or absentee ballot with a defective declaration is postmarked on November 3 but is received on November 4, then the voter will not receive an opportunity to change the ballot.  Indeed, Julia Vahey's declaration demonstrates Montgomery County treated similarly situated voters differently even on November 3 and November 4.  Julia Vahey Decl. ¶¶ 2-10.

Even within Montgomery County, equivalent votes were treated differently in violation of the Equal Protection Clause.  Each person in Montgomery County should receive one vote under Pennsylvania's Election Code, but only certain people with defects in their mail-in or absentee ballots received the opportunity to change their ballot.

V.    **This Court should issue a temporary restraining order because once the mail-in and absentee ballots at issue are commingled, nothing may be done to relieve Plaintiffs, and segregating the mail-in and absentee ballots at issue is not difficult for defendants and is in the public interest.**

Plaintiffs have demonstrated likely success on the merits as Defendants' conduct violates the Pennsylvania Election Code, Dillon's Rule, and the Equal Protection Clause for the reasons set forth above.  Plaintiffs are currently suffering irreparable harm as Montgomery County officials are commingling the mail-in and absentee ballots at issue with other ballots, and once such

commingling occurs, it cannot be undone.  It is not difficult for Montgomery County officials to segregate and set aside all mail-in or absentee ballots with any perceived or actual defect and also to segregate and set aside any mail-in or absentee ballot which has allegedly been changed or altered in any way by the voter after it has been submitted to Montgomery County until this Court has the opportunity to decide the merits of this case.  Granting relief will be in the public interest as equivalent votes in different counties and amongst similarly situated Montgomery County voters are being treated differently.

Accordingly, this Court should grant the temporary restraining order to require Montgomery County to immediately segregate and set aside all mail-in or absentee ballots with any perceived or actual defect and also segregate and set aside any mail-in or absentee ballot which has allegedly been changed or altered in any way by the voter after it has been submitted to Montgomery County.

## CONCLUSION

Equivalent votes in different counties or within the same county should not be treated differently.  Montgomery County's decision to allow some voters but not others to change their ballot violates Pennsylvania's Election Code, Dillon's Rule, and the Equal Protection Clause. Plaintiffs respectfully request that this Court grant them a temporary restraining order.


Respectfully Submitted,

**DILLON, MCCANDLESS, KING, COULTER & GRAHAM, LLP**

Dated: November 5, 2020                    By: /s/ Thomas E. Breth
                                           PA. I.D. No. 66350
                                           Counsel for Plaintiffs