IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KATHY BARNETTE AND CLAY D. BREECE | ) ) ) | CIVIL ACTION |
| Plaintiffs, | ) ) ) | |
| v. | ) ) ) | No. 2-20-cv-05477 |
| KENNETH E. LAWRENCE JR., VALERIE A. ARKOOSH. MD, MPH, FRANK DEAN, in their individual capacities, | ) ) ) ) ) | |
| Defendants. | ) | |

**INTERVENOR PENNSYLVANIA DEMOCRATIC PARTY'S RESPONSE TO PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR TEMPORARY RESTRAINING ORDER**

I. **INTRODUCTION**

This action is yet another misguided attempt to elevate a garden-variety allegation about routine administration of the election into an Equal Protection Clause claim. Plaintiffs ask this Court for an extraordinary relief: to disenfranchise voters by setting aside and voiding **93** valid mail-in and absentee ballots that qualified voters in Montgomery County validly cast by Election Day. Plaintiffs contend that the Defendants (referred to collectively as the "MontCo Board") long-standing "notice and cure" practice for voters opting to vote-by-mail is a violation of both the Pennsylvania Election Code and the Equal Protection Clause of the United States Constitution. Plaintiffs' claims are meritless.

First, Plaintiffs' misapply the rules that apply to the "pre-canvass" on Election Day to the MontCo Board's routine and traditional ballot handling processes that occur prior to Election Day. This misconstruction leads to a claim that the MontCo Board unlawfully conducted a pre-canvass

in violation of the Election Code when it identified technical deficiencies in a small number of voters' mail-in ballot packages and contacted those voters offering opportunities to cure these deficiencies before 8:00 p.m. on Election Day. Not so – the actions prior to Election Day are the same actions that the MontCo Board has done every election for years, while the pre-canvass is a new creature of state law created by Act 12 of 2020. Just adopted by the General Assembly earlier this year, a pre-canvass is clearly defined under the Election Code. 25 P.S. § 2602(q.1). The "pre-canvass" is a defined set of activities that occur in a precise window of time, and the notice and cure procedures are not part of the process so defined by the Election Code.

      Second, the Election Code neither requires nor prohibits county election boards from contacting qualified voters to cure their mail-in or absentee ballot packages on or before Election Day, and the Pennsylvania Supreme Court in *Pennsylvania Democratic Party, et al v. Boockvar, et al*, 133 MM 2020, --- A.3d ---, 2020 WL 5554644, at *19-20 (Pa. Sept. 17, 2020) ("*Boockvar*"), never held otherwise. Even if the MontCo Board's traditional notice and cure practice is not expressly specified under the Election Code, there is nothing in the law supporting the proposition that such a practice gives rise to an equal protection violation. While the MontCo Board decided to exercise its statutory discretion to contact voters whose mail-in and absentee ballots contained technical defects, and the Berks County Board of Elections ("Berks Board") apparently opted not to, these differing election implementation decisions do not devalue any votes in Berks County. The MontCo Board's practice is entirely consistent with the authority delegated by the General Assembly and does not run afoul of the Equal Protections Clause.

      Plaintiffs' claims fail as a matter of law and should be dismissed with prejudice. Alternatively, Plaintiffs' fail to meet the standards necessary to support their Motion for

Temporary Restraining Order, and the Motion should be denied that their Complaint should be dismissed.

II. **ARGUMENT**

### A. Neither the Election Code or the Pennsylvania Supreme Court Prohibit Boards from Contacting Voters to Cure Their Mail-In or Absentee Ballots

As a preliminary matter, Plaintiffs' argument that the MontCo Board election staff's review of mail-in and absentee ballot envelopes for technical deficiencies before 7:00 a.m. on Election Day constitutes pre-canvassing in violation of the Election Code is mistaken. Under Act 12 of 2020, the General Assembly amended when mail-in and absentee ballots could be reviewed and counted and defined the term pre-canvass. 25 P.S. § 3146.8(g)(1)(ii)(1.1). A pre-canvass is defined conjunctively, not disjunctively, as "the inspection and opening of all envelopes containing official absentee and mail-in ballots, the removal of such ballots from the envelopes **and** the counting, computing and tallying of the votes reflected on the ballots." 25 P.S. § 2602(q.1). The MontCo Boards' decision to look at the outer envelope for technical defects and determine whether they contain a secrecy envelope is not, without more, a pre-canvass.

The Election Code clearly contemplates that election boards will engage in certain ballot envelope inspection activities that do not constitute pre-canvassing. First, the Election Code gives all qualified voters, including those opting to vote by mail or absentee ballot, until 8:00 p.m. on Election Day to cast their ballot. 25 P.S. § 3146.6(a); 3150.16(a). The Code further permits qualified voters to cast a provisional ballot by 8:00 p.m. on Election Day to cure perceived deficiencies in their mail-in ballot (or, in the event the qualified voter never received his or her mail-in ballot). *Id.* at § 3150.16(b)(2). Contrary to Plaintiffs' assertions, the Election Code does not prohibit Boards from contacting voters to fix procedurally deficient mail-in ballot envelopes *before* 8:00 p.m. on Election Day. 25 P.S. § 101, *et seq.*

3

Plaintiffs completely misinterpret the Pennsylvania Supreme Court decision about notice and cure issued in September. *See Boockvar*, 2020 WL 5554644 at *19-20. In that opinion, the Supreme Court held **only** that "Boards are not **required** to implement 'notice and opportunity to cure' procedures for mail-in and absentee ballots that voters have filled out incompletely or incorrectly." *Id.* at *20; *see also In re November 3, 2020 Gen. Election*, 149 MM 2020, --- A.3d ---, 2020 6252803, at *6 (Pa. Oct. 23, 2020) (observing that unlike for in-person voters, the Election Code provides no affirmative opportunity for qualified electors to cure mail-in and absentee ballots). Stated differently, the Pennsylvania Supreme Court's ruling is narrower and only states that the Free and Equal Elections Clause did not *mandate* that Boards implement certain requested procedures to provide qualified voters notice to cure their defective mail-in and absentee ballots in light of the pandemic.

Plaintiffs' argue that the Election Code's silence about the authority of election boards to provide voters with pre-canvassing "notice and cure" opportunities of mail-in absentee ballot envelope submissions should be interpreted as a mandatory prohibition. The rules of statutory construction do not support Plaintiffs' interpretation. It is well-settled that courts are "not permitted, under the guise of interpretation, to add words to a statute that the General Assembly omitted." *Sadler v. W.C.A.B.*, 210 A.3d 372, 383 (Pa. Commw. Ct. 2019). And, when a statute is ambiguous–or in this case silent–regarding particular conduct, courts should turn to interpretative principles that govern ambiguous statutes [,] including election matters." *Boockvar*, 2020 WL 5554644, at *9. Towards this end, courts should be mindful of the "longstanding and overriding policy in this Commonwealth to protect the elective franchise." *Id.* (citing *Shambach v. Bickhart*, 845 A.2d 793, 798 (Pa. 2004)). Courts should also consider "the occasion and necessity for, the mischief to be remedied by, and the object to the obtained by the statute." *Id.*

These principles lead to the conclusion that the Election Code permits election boards to contact qualified voters who voted by mail or absentee ballot to give them an opportunity to correct technical deficiencies on their ballot package before the statutory deadline to cast their ballot. Indeed, that conclusion is consistent with the General Assembly's decision to "expand [] voting by mail" (*In re November 3, 2020 Gen. Election*, 2020 WL 6252803, at *14) and "with enfranchising, rather than disenfranchising, qualified voters." *Boockvar*, 2020 WL 5554644, at *9.

This conclusion is consistent with the authority and discretion delegated to election boards by the General Assembly. *Boockvar*, 2020 WL 5554644 at *28 (explaining the General Assembly established a "county-based scheme to manage elections within the state") (quoting *Republican Party of Pennsylvania v. Cortes*, 218 F. Supp. 3d 396, 409 (E.D. Pa. 2016)); 25 Pa. C.S. § 2641(a) (election boards have broad powers and "jurisdiction over the conduct of primaries and elections in such counties"). The simple fact is that some election boards, such as the MontCo Board, chose to exercise their statutory authority to assist qualified voters in this fashion, and some did not, is not a violation of the Election Code.

### B. The MontCo Board's Decision to Contact Voters to Cure Technical Defects in their Ballot Packages is Not an Equal Protection Violation

Even assuming the MontCo Board's historical notice and cure practice is not permitted under the Election Code–which it is–the allegations in Plaintiffs' Complaint do not rise to an Equal Protection violation. Less than a month ago, Judge Ranjan in *Donald J. Trump for President, Inc. v. Boockvar* ("*DJT*") persuasively and exhaustively explained what constitutes–and more importantly, what does not constitute–an Equal Protection violation in the election context. --- F.Supp.3d ---, 2020 WL 5997680, at *45-46 (W.D. Pa. Oct. 10, 2020). Judge Ranjan's opinion– together with an abundance of other federal court decisions–shows that the MontCo Board's

decision to provide notice and cure opportunities for qualified voters, juxtaposed with the Berks Board's decision not to do so, does not offend the Equal Protections Clause.

Judge Ranjan followed the fundamental constitutional principal that "[e]qual protection does not demand the imposition of 'mechanical compartments of law all exactly alike.'" *Id.* at *45 (quoting *Jackman v. Rosenbaum Co.*, 260 U.S. 22, 31, 43 S.Ct. 9, 67 L.Ed. 107 (1922)). Rather, the law must be viewed in context, *see id.*, and particularly in the election context, "few (if any) electoral systems could survive constitutional scrutiny if the use of different voting mechanisms by counties offended the Equal Protection Clause." *Id.* (quoting *Trump v. Bullock*, --- F.3d ---, 2020 WL 5810556, at *14 (D. Mont. Sept. 30, 2020)). Different voting mechanisms are permitted when "the result of that uneven implementation will not be votes in certain counties being valued less than others" and such mechanisms do not amount to unequal treatment and give rise to an Equal Protection Claim. *Id.*

Plaintiffs reliance on *Bush v. Gore*, 531 U.S. 98, (2000), a non-precedential decision, to support their equal-protection claims is inapplicable. Judge Ranjan soundly rejected a very similar argument proffered by the plaintiffs in *DJT* when he dismissed *Bush's* application to claims like Plaintiffs here , stating: "[t]he distinction—between differences in county election procedures and differences in the treatment of votes or voters between counties—is reflected in *Bush* itself." *Id.* Judge Ranjan explained that in *Bush*, "*the Supreme Court took pains to clarify that the question before it was 'not whether local entities, in the exercise of their expertise, may develop different systems for implementing elections*.'" *Id.* (quoting *Bush*, 531 U.S. at 109, 121 S.Ct. 525); *see also id*. at 134, 121 S.Ct. 525 (Souter, J. dissenting) ("It is true that the Equal Protection Clause does not forbid the use of a variety of voting mechanisms within a jurisdiction, even though different mechanisms will have different levels of effectiveness in recording voters' intentions; local variety

can be justified by concerns about cost, the potential value of innovation, and so on."); *Bullock*, ---  F.3d at ---, 2020 WL 5810556, at *14 ("[T]he Supreme Court was clear in *Bush v. Gore* that the question was not whether local entities, in the exercise of their expertise, may develop different systems for implementing elections.") (cleaned up).

Judge Ranjan also recognized that Pennsylvania is not a single election unit for the purposes of election related equal-protection claims, stating that:

> If this were a true equal-protection problem, then it would transform every violation of state election law (and, actually, every violation of every law) into a potential federal equal-protection claim requiring scrutiny of the government's "interest" in failing to do more to stop illegal activity. This is not the law. To the contrary, it is well-established that even violations of state election laws by state officials, let alone violations by unidentified third parties, do not give rise to federal constitutional claims except in unusual circumstances.

*See Id.* (citing *Shipley v. Chicago Bd. of Election Commissioners*, 947 F.3d 1056, 1062 (7th Cir. 2020) ("A violation of state law does not state a claim under § 1983, and, more specifically, a deliberate violation of state election laws by state election officials does not transgress against the Constitution.") (cleaned up); *Martinez v. Colon*, 54 F.3d 980, 989 (1st Cir. 1995) ("[T]he Constitution is not an empty ledger awaiting the entry of an aggrieved litigant's recitation of alleged state law violations—no matter how egregious those violations may appear within the local legal framework.")).

As in *DJT*, Plaintiffs fail to allege an equal protection violation because the MontCo Board's historical notice and cure practice does not result in votes cast in Montgomery County being valued more than votes cast in Berks County. The MontCo Board chose to allocate its resources and time to contact voters to give them the opportunity to cure the technical deficiencies in their mail-in and absentee ballot packages. Plaintiffs contention that the MontCo Board

insidiously permits "select voters to change their ballots" (Compl. at ¶ 40) or "vote twice" (Dkt. 32, pg. 20) is patently not true, and Plaintiffs have offered not one iota of evidence otherwise. The MontCo Board contacted voters whose ballot packages contained technical defects, so they could cure them and cast a valid ballot like other qualified voters in the county, thus treating them the same as other voters who desired to cast a ballot.

Across the county line, the Berks Board, in its discretion, and based on its unique circumstances, budget, and other considerations chose not to allocate its resources in such a manner. While this administrative choice may be a differing element of election implementation, the choice does not devalue votes cast in Berks County. Rather, the MontCo Board's practice only ensured that qualified voters in the county–with no regard to party affiliation–were not disenfranchised. The actions of the MontCo Board had no effect on voters in Berks County, was entirely consistent with the administrative discretion delegated by the General Assembly, and does not rise to a violation of the Equal Protection Clause.[1]

### III. CONCLUSION

For all the foregoing reasons, and those set forth in Defendants and other Intervenor's responses to Plaintiffs' Motion and Memorandum in Support of the Motion for a Temporary Restraining Order, the PA Democratic Party respectfully requests that this Court dismiss Plaintiffs' Complaint with prejudice, or alternatively, deny Plaintiffs' Motion for a Temporary Restraining Order.

---

[1] Plaintiffs' claims are also barred by laches and other equitable factors mitigating against the bringing of these types of claims too late to allow an effective remediation, particularly where Plaintiffs had access to all accessible information at an earlier time. Intervenors join this argument, and all other arguments for denial of the temporary restraining order and for dismissal, made by the MontCo Board.

|  |  |
|---|---|
|  | Respectfully submitted, |
| Dated:  November 6, 2020 | */s/ A. Michael Pratt*<br>A. Michael Pratt<br>Kevin M. Greenberg<br>Adam R. Roseman<br>George J. Farrell<br>**GREENBERG TRAURIG, LLP**<br>1717 Arch Street, Suite 400<br>Philadelphia, PA  19103<br>(t) 215.972.5916/7818/7826/7867<br>(f) 215.988.7801<br>prattam@gtlaw.com<br>greenbergk@gtlaw.com<br>rosemana@gtlaw.com<br>farrellg@gtlaw.com<br><br>*Attorneys for Intervenor* |

## CERTIFICATE OF SERVICE

I, A. Michael Pratt, hereby certify that on November 6, 2020, I caused a true and correct copy of the foregoing Response to Plaintiffs' Memorandum of Law in Support of their Motion for Temporary Restraining Order to be served on counsel of record for Plaintiffs and Defendants listed on the docket via the Court's ECF system.

/s/ A. Michael Pratt
A. Michael Pratt